Town of Westport et al. *v.* City of Norwalk et al.

House, C. J., Shapiro, Loiselle, MacDonald and Bogdanski, Js.

152

Argued June 7—decision released August 20, 1974

*Grove W. Stoddard,* with whom, on the brief, was *John S. Barton,* for the appellants (plaintiff John G. Akin et al.).

*Stanley P. Atwood,* town attorney, for the appellant (named plaintiff).

*Melvin J. Silverman,* for the appellee (defendant Flower Estates at Cranbury, Inc.); with him, on the brief, was *Arthur J. Goldblatt,* corporation counsel, for the appellee (defendant planning and zoning commission of the city of Norwalk).

SHAPIRO, J. In June of 1972, the defendant Flower Estates at Cranbury, Inc., (hereinafter called Flower Estates) made application to the planning and zoning commission of the city of Norwalk (hereinafter called the commission) for approval of a plan for a fifty-lot subdivision of a thirty-acre tract of unimproved land. The land, situated entirely in Norwalk, is bounded on the west by Wolfpit Avenue, on the north by Partrick Avenue and on the east by Cranbury Road; Cranbury

Road forms a boundary between Norwalk and Westport. The plaintiffs comprise the town of Westport, the Norwalk-Westport Cranbury Association, Inc., and various property owners in the area and vicinity of the proposed subdivision. On September 6, 1972, the commission approved the plan. The plaintiffs appealed to the Court of Common Pleas where the appeal was dismissed. Upon the granting of their petition for certification, the plaintiffs appealed to this court.

The plaintiffs, in their brief, have abandoned their first assignment of error relating to a ruling on evidence. They assign error in the overruling by the court of various claims of law and in the claim that the court erred in employing improper standards of review to test the action taken by the commission with respect to the Flower Estates subdivision. We will discuss this last claim first.

In their brief, the plaintiffs argue that the standards of judicial review as applied by the court "to this subdivision appeal were standards properly employed only in zoning cases where the central issue is the proper use of discretion by the zoning agency" and that the use of this standard by the court "never permitted it to reach the central issue of a subdivision case which is, did the application comply" with the subdivision regulations of the city of Norwalk.

The trial court, in its memorandum of decision, recited that this is an appeal from the planning and zoning commission of the city of Norwalk "approving a subdivision plan for a tract of unimproved land" and that "the basic ground for said appeal is that the board acted illegally, unreasonably, arbi-

trarily and in abuse of its discretion, as more fully set forth in said plaintiffs' appeal." In their appeal, the plaintiffs allege that they are aggrieved by the action of the commission in approving the subdivision in that the approval is in violation of § 3.01[1] of the subdivision regulations and will result in increased flood damage to their properties; and in that such approval is in violation of § 3.07[2] of the subdivision regulations and will adversely affect traffic, fire protection and general safety in the area of the plaintiffs' properties. Nowhere in their appeal do the plaintiffs allege that "the board acted illegally, unreasonably, arbitrarily and in abuse of its discretion."

In February, 1968, at the time of this court's decision in *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 239 A.2d 534, planning in the city of Norwalk was governed by special act and not by the general statutes. At that time, approval of plans for a subdivision was required by the Norwalk planning commission in the first instance and then by the Norwalk common council. By special acts, in 1947 and 1955, a city planning commission was established in Norwalk. *J & M Realty Co.* v. *Norwalk,* supra, 188. By amendment to the charter of the city of Norwalk (1970), § 1-368.1, effective January 1, 1971, the planning commission was granted "the

---

[1] "[Norwalk Subdivision Regs., art. III § 3.01 (1968).] HAZARDOUS AREAS: Land shall not be subdivided if it is of such character that it cannot be safely used for building purposes because of danger to health, peril from fire, flood or other menace. Nor shall subdivisions be permitted which might increase the danger to health life or property, or aggravate the flood hazard."

[2] "[Norwalk Subdivision Regs., art. III § 3.07 (1968).] BLOCK WIDTH AND LENGTH: Blocks created by new subdivisions shall be at least 200 feet wide and at least 200' long but not more than 1200' long."

powers and duties granted to and imposed on planning commissions under Chapter 126 of the Connecticut General Statutes, which are not inconsistent with the duties and powers set forth in said Charter." By virtue of a further charter amendment, § 1-368.2, provision was made whereby the common council was authorized to consolidate the planning and zoning commissions. By adoption on July 13, 1971, § 116-13 of the Code of the City of Norwalk provided that pursuant to authority under § 1-368.2 the planning commission was designated as the planning and zoning commission. By adoption of § 116-14, that commission was granted all the powers and made subject to all of the duties of zoning commissions under provisions of chapter 124 of the General Statutes,[3] together with all powers and duties imposed upon the planning commission under the city charter and all powers and duties granted to and imposed upon planning commissions under chapter 126 of the General Statutes,[4] not inconsistent with those set forth in the charter.

"In exercising its function of approving or disapproving a subdivision plan, the planning board acts in an administrative capacity. In passing upon a plan, its action is controlled by the regulations adopted for its guidance. It has no discretion or choice but to approve a subdivision which conforms to the regulations." *Langbein* v. *Planning Board,* 145 Conn. 674, 679, 146 A.2d 412; *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917. "Zoning, on the other hand, is concerned with the use of property." *Purtill* v. *Town Plan & Zoning Commission,* 146

---

[3] General Statutes chapter 124 relates to zoning.
[4] General Statutes chapter 126 relates to municipal planning.

Conn. 570, 572, 153 A.2d 441. In voting a change of zone of an area, a zoning commission exercises a legislative function. See *Burke* v. *Board of Representatives*, 148 Conn. 33, 38, 166 A.2d 849; *Kutcher* v. *Town Planning Commission*, 138 Conn. 705, 709, 88 A.2d 538.

Here, the trial court in its memorandum of decision regarding the commission's action used language appropriate to an appeal from a zoning commission. However, the effect of its decision is that, in view of the plaintiffs' appeal, the court, in its judgment, found the issues for the defendants and dismissed the appeal. The case was presented in the court below on the record of the proceedings before the commission. The only testimony in the record—that relating to a witness called on behalf of the plaintiffs—is not now before us, since a ruling thereon having been assigned as error was abandoned by the plaintiff. The court limited its finding to the issue of aggrievement.

The plaintiffs, while arguing that they have been denied adequate judicial relief because their appeal was treated by the court as one taken from a zoning commission rather than one taken from a planning commission, nevertheless request us to review the record and determine the appeal on its merits. This we will do, while pointing out that a review of the record of the commission which was before the trial court and our determination of the remaining issues assigned as error, for the reasons enumerated below, lead us to the conclusion that the trial court was correct when it dismissed the appeal. "Simply because the trial judge relied on the wrong theory does not render the judgment erroneous. A correct decision can be sustained although it may have been

placed on the wrong grounds. *Emerick* v. *Monaco & Sons Motor Sales, Inc.,* 145 Conn. 101, 106, 139 A.2d 156." *Powers* v. *Common Council,* 154 Conn. 156, 161, 222 A.2d 337; Maltbie, Conn. App. Proc. § 36.

The plaintiffs make the claim that the approval by the commission of the subdivision plan was illegal in that it violated § 3.01 of the subdivision regulations. The plaintiffs contend that upon the evidence before the commission, it could not reasonably have come to any other conclusion than that the subdivision might aggravate the flood hazard and therefore the commission was required to disapprove the application. The burden was on the plaintiffs to prove that the action of the board was illegal. *Blakeman* v. *Planning Commission,* 152 Conn. 303, 306, 206 A.2d 425. Before a planning commission can exercise any control over the planning of a subdivision, regulations must be adopted for its guidance. *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 191, 239 A.2d 534; *South East Prop. Owners & Residents Assn.* v. *City Plan Commission,* 156 Conn. 587, 590, 244 A.2d 394; *Langbein* v. *Planning Board,* 145 Conn. 674, 679, 146 A.2d 412. "[I]n passing on subdivision plans, the council is to be controlled by the regulations which it has adopted." *J & M Realty Co.* v. *Norwalk,* supra, 191; see *South East Prop. Owners & Residents Assn.* v. *City Plan Commission,* supra, 591; *North Rollingwood Property Owners Assn.* v. *City Plan Commission,* 152 Conn. 518, 521, 209 A.2d 177; *Langbein* v. *Planning Board,* supra, 679; *Beach* v. *Planning & Zoning Commission,* 141 Conn. 79, 83, 103 A.2d 814. If the subdivision plan conforms to the existing regulations the council "has no discretion or choice but to approve a subdivision." *Langbein* v.

*Planning Board,* supra, 679; see *South East Prop. Owners & Residents Assn.* v. *City Plan Commission,* supra, 591; *Beach* v. *Planning & Zoning Commission,* supra, 84. Conversely, if the subdivision plan does not conform to the regulations the plan must be disapproved. *South East Prop. Owners & Residents Assn.* v. *City Plan Commission,* supra, 591; *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 675, 236 A.2d 917.

Regulations concerned with subdivisions in Norwalk had been adopted pursuant to 25 Spec. Laws 303, No. 214, § 5. One such regulation was Norwalk subdivision regulation § 3.01, the language thereof already having been quoted in footnote 1. Thus, the function of the commission in the present case was to determine whether the subdivision plan as submitted by Flower Estates conformed with this regulation.

The first hearing on the application took place on June 20, 1972, before the subdivision committee of the commission. Following a favorable report of June 5, 1972, from the zoning officer, a second meeting of the subdivision committee was held, and on September 6, 1972, the subdivision plan was approved by the committee, although the effect of that approval was only to permit the application to go before the commission. The hearing before the full commission took place on September 6, 1972. The appendices to the briefs disclose that the evidence at the hearing before the commission, offered by the plaintiffs and by Flower Estates, was in conflict, but its probative force was for the commission. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 359, 232 A.2d 916. There was evidence in behalf of the plaintiffs that

there would be an increase of water from the subdivision, that this would aggravate the flood hazard, and that therefore the subdivision should be disapproved. There was also evidence in behalf of Flower Estates which challenged that claim pointing to a study of the subdivision which had been made to determine if the proposed development of the land would increase the storm drainage problem in Stony Brook. The study showed that the subdivision produces no runoff in the percentage of runoff increase and deals with the discharge before the main body of water runoff is presented to the area; that it is difficult to measure how much water falls within a certain area and then how long it takes to reach certain points to achieve the peak runoff period; that the major contributory to Stony Brook is at the Partrick Avenue culvert in Westport and the minor contributory area is this subdivision. Reference was made to charts showing what area of the subdivision contributes to Stony Brook and also where the other runoff comes, being mainly from the Partrick Avenue area. Poor maintenance practices are the reason for the problems and the proposed subdivision will not add any increase in the amount of storm runoff. The study also showed that the concern about flooding has arisen from the lack of proper stream encroachment regulations rather than increased development within the upstream tributary areas; that through the years extensive encroachments have been constructed by some of the property owners along the stream without proper engineering guidance or municipal regulations; and that this, together with the obvious lack of channel maintenance, is the real problem to be corrected.

The subdivision committee of the commission, in its approval of the Flower Estates subdivision plan,

stated: "This is basically the same application as was previously approved by the Commission and the Common Council in May, 1969 but was later denied by the Supreme Court on grounds of a legal technicality."[5] This committee referred to two proposed streets, Regency Drive to be 2050 feet in length and Queens Gate to be 400 feet in length. Reference was also made to the requirement of providing specific storm drainage, water mains, sanitary sewer mains, laterals, manholes and a sewage pumping station. Further conditions were imposed in that certain easements through the subdivision were retained by the city of Norwalk relating to drainage and sanitary sewer easements; a conveyance is to be made to the city of a portion of the subdivision, designated as Parcel A, for purposes of a sewage pumping station; the storm drainage from the area south of the subdivision is to enter a drainage pipe between lots 26 and 27 and continue under Regency Drive to Partrick Avenue and, at a fixed point, the flow is to be diverted into an adjacent pond; and the outflow from this pond is to continue in the pipe under Regency Drive and Partrick Avenue into a brook north of the latter street. This brook now flows through a thirty-six inch pipe under Cranbury Road into Stony Brook which flows into the town of Westport. The existing thirty-six inch pipe under Cranbury Road will be replaced with a thirty-eight-inch by sixty-inch low head pipe to provide additional discharging capacity for any increase in runoff from the subdivision. The drainage system for the subdivision has been designed so that fifteen acres of this property will drain into the brook north of Partrick Avenue, approximately eight acres will drain to Cranbury Road, and about seven

[5] See *Akin* v. *Norwalk,* 163 Conn. 68, 70, 301 A.2d 258.

acres will drain to Wolfpit Avenue. Drainage on Wolfpit Avenue will be piped and connected to the city storm drainage system. The drainage and the sewerage design for the subdivision have been checked and approved by the Norwalk Department of Public Works. A surety bond in the amount of $236,000 was recommended so as to insure the proper completion of the required improvements within ninety days of action by the commission.

At the commission meeting of September 6, 1972, the subdivision plans were approved "subject to the submission of a surety bond in the amount of $236,000 or proper completion of the required improvements within 90 days of Commission action and also subject to the submission of written sanitary sewer and storm drainage easements to the City of Norwalk."

Whether the land in question "might . . . aggravate the flood hazard"; Norwalk Subdivision Regs., art. III § 3.01; presented debatable questions of fact which were within the commission's province to resolve. In testing the decision of the commission, its action "is reviewed in the light of the record developed before it." *Blakeman* v. *Planning Commission,* 152 Conn. 303, 306, 206 A.2d 425. "It is enough to point out the reasonableness of the conclusions arrived at . . . . 'The essential question, in any case, is whether . . . [the commission's decision] is reasonably supported. Courts do not substitute their own judgment for that of the commission so long as honest judgment has been reasonably and fairly exercised after a full hearing.'" Id., 308. We find that the record amply supports the action of the commission in approving the subdivision plan. It cannot be said that it acted illegally in

that it violated § 3.01 of the regulations pertaining to subdivisions which might aggravate the flood hazard. Accordingly, the plaintiffs cannot prevail on this claim.

The plaintiffs have assigned error claiming that the commission's approval of the subdivision plan was illegal in that it violated § 3.07[6] of the subdivision regulations which prohibits the creation of blocks by new subdivisions which are more than 1200 feet long.

"[W]e have consistently held that, in exercising its function of approving or disapproving any particular subdivision plan, . . . a municipal planning commission is acting in an administrative . . . capacity." *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 190, 239 A.2d 534. "Its action was controlled by the regulations adopted for its guidance." *Blakeman* v. *Planning Commission,* supra, 306. "Where the language is plain and unambiguous, as in the present case, the intent of the regulation is to be determined from its language." *J & M Realty Co.* v. *Norwalk,* supra, 192. "When the language . . . is clear and unambiguous, its meaning is not subject to modification by construction . . . . It is not the function of the courts to read into clearly expressed legislation provisions which do not find expression in its words." *Dental Commission* v. *Tru-Fit Plastics, Inc.,* 159 Conn. 362, 365, 269 A.2d 265; *Little* v. *United Investors Corporation,* 157 Conn. 44, 48, 245 A.2d 567. In analyzing § 3.07 of the regulations in the light of these principles it is clear that the language clearly and unambiguously indicates the intent that § 3.07 is to be considered

[6] See footnote 2.

only when "new" land in subdivisions is actually created in "block" form. It does not require that all newly developed land be divided into "blocks." In this regard, the regulation is not subject to modification by construction. *Little* v. *United Investors Corporation,* supra, 48; *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36; *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683, 124 A.2d 898.

Whether § 3.07 is relevant to the present case depends upon whether a "block" has been created by the subdivision plan as submitted by Flower Estates. Words used in statutes and regulations "are to be construed according to their commonly approved usage." *Klapproth* v. *Turner,* 156 Conn. 276, 280, 240 A.2d 886. See *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 100, 291 A.2d 721; *State* v. *Cataudella,* 159 Conn. 544, 553, 271 A.2d 99; *State* v. *Benson,* 153 Conn. 209, 214, 214 A.2d 903. "Or, stated another way, statutory language is to be given its plain and ordinary meaning. *State* v. *Taylor,* 153 Conn. 72, 82, 214 A.2d 362." *Klapproth* v. *Turner,* supra, 280. Black, Law Dictionary (3d Ed.) defines "block" as "[a] square or portion of a city or town inclosed by streets . . . . The platted portion of a city surrounded by streets." Webster, Third New International Dictionary defines the word, inter alia, as "a usu. rectangular space (as in a city) enclosed usu. by streets but sometimes by other bounds (as rivers or railroads)." See *Berndt* v. *City of Ottawa,* 179 Kan. 749, 298 P.2d 262; *Sports Center, Inc.* v. *City of Wichita,* 176 Kan. 84, 269 P.2d 399; *Harrison* v. *People ex rel. Boetter,* 195 Ill. 466, 63 N.E. 191; Block, Words & Phrases (Perm. Ed.), 781–89, and cases cited therein.

In the present case, the subdivision map does not depict the subdivision as creating any "block" as intended by § 3.07 of the regulations in the light of the commonly approved meaning of the word. The tract of land in question is bounded by streets only on three sides—on the east by Cranbury Road, on the north by Partrick Avenue and on the west by Wolfpit Avenue. To the south the tract is bounded by privately-owned property which is not owned or controlled by Flower Estates; nor does Regency Drive, the proposed new street running approximately 2100 feet from Partrick Avenue to Wolfpit Avenue, enclose any of the tract so as to create a block. No block having been created, regulation § 3.07 requiring "blocks," only if in fact created, to be a certain minimum width and minimum and maximum length, is irrelevant to the present case and could not, a fortiori, be violated as the plaintiffs contend.

On October 11, 1973, Flower Estates filed a bill of exceptions claiming that there is no jurisdiction "since the appeal was not taken from the final authority on planning within the City of Norwalk." This issue is argued by Flower Estates in its brief. Since we have reached the conclusion that there is no error, there is no need to consider the bill of exceptions filed by this defendant. *Hill* v. *Birmingham,* 131 Conn. 174, 179, 38 A.2d 604; *Podzunas* v. *Prudential Ins. Co.,* 125 Conn. 581, 586, 7 A.2d 657; Maltbie, Conn. App. Proc. § 288.

There is no error.

In this opinion the other judges concurred.