ROBERT G. REED v. PLANNING AND ZONING COMMISSION OF THE TOWN OF CHESTER
(4889)

SPALLONE, BIELUCH and BERDON, Js.

*(One judge dissenting)*
Argued March 11—decision released August 25, 1987

*Thomas P. Byrne,* for the appellant (defendant).

*Peter M. Sipples,* for the appellee (plaintiff).

SPALLONE, J. The defendant planning and zoning commission of the town of Chester is appealing from the judgment of the trial court sustaining the plaintiff's appeal from the defendant's denial of the plaintiff's application for a subdivision approval. The defendant's central claim is that the trial court erred in concluding that the commission had no authority to deny the subdivision application on the ground that the public road abutting the subdivision provided inadequate access to the subdivision. We find no error.

On July 14, 1983, the plaintiff, Robert G. Reed, filed an application with the defendant seeking approval for a twelve lot subdivision of a 33.34 acre parcel of land, located on the east side of Turkey Hill Road in Chester. Turkey Hill Road is a public road that is partially unpaved. This unpaved section is narrower than the paved section, and some of the lots of the proposed subdivision abutted this unpaved section. At a duly noticed meeting held on September 8, 1983, the defendant denied the application on the sole ground "that [Turkey Hill Road] at the present time is inadequate to provide safe access and egress to the proposed lots for either residents or emergency vehicles." The plaintiff appealed to the Superior Court from the defendant's denial of its subdivision application.

On November 8, 1985, the trial court rendered judgment sustaining the plaintiff's appeal and directing the defendant to approve the plaintiff's subdivision application. The court held that none of the Chester subdivision regulations authorized the defendant to deny a subdivision application on the ground of inadequate public access. We granted certification and the defendant filed this appeal.

The defendant contends that the trial court erred in concluding that the Chester subdivision regulations did not allow the commission to deny the plaintiff's application on the ground that Turkey Hill Road provided inadequate access to the proposed lots. The defendant claims that sections 2.0,[1] 3.1,[2] and 3.2[3] of the Chester subdivision regulations, which generally require the commission to determine if a lot is "buildable," can be reasonably read to include a duty to determine whether safe access and egress may be had to the proposed lots.

It is well established that when reviewing a subdivision application, a planning commission acts in an

[1] Section 2.0 of the Chester subdivision regulations provides in part: "All land to be subdivided or re-subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety . . . ."

[2] Section 3.1 of the Chester subdivision regulations provides in part: "The following regulations and design standards shall apply to the planning and map layout of . . . lots . . . and other improvements and facilities shown on the subdivision map."

[3] Section 3.2 of the subdivision regulations provides: "The proposed lots shall be of such shape, size, location, topography and character that buildings can be reasonably constructed and that they can be occupied and used for building purposes without danger to the health and safety of the occupants and the public. Any lot which is found to be unsuitable for occupancy and building by reason of water or flooding conditions, unsuitable soil, topography, ledge rock or other conditions shall be combined with another lot that is suitable or shall be marked 'This is not an approved lot' on the subdivision map, until necessary improvements to the lot have been made and approved by the Commission and a revised subdivision map has been submitted to and approved by the Commission. All proposed lots shall conform to the requirements of the Zoning Regulations of the Town of Chester."

administrative capacity. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917 (1967). If the application conforms to the regulations, the commission has no discretion and must approve it. Conversely, the application must be denied if it does not conform to the regulations.[4] *Westport* v. *Norwalk,* 167 Conn. 151, 157–58, 355 A.2d 25 (1974); *Gagnon* v. *Municipal Planning Commission,* 10 Conn. App. 54, 57, 521 A.2d 589 (1987). The main issue in the present case, therefore, is whether the Chester subdivision regulations can be fairly read to contain a requirement that an applicant must ensure that there is adequate access to proposed subdivision lots that are abutted by an inadequate public road. If the regulations contain such a requirement, the commission, upon finding that Turkey Hill Road provided inadequate access, would have no discretion but to deny the application. *Westport* v. *Norwalk,* supra. Conversely, if the regulations did not contain such a requirement, the commission, since it failed to find that the application violated any other subdivision requirement, would be obligated to grant the application. Id.

While the defendant points to several regulations that it claims authorize the commission to evaluate the access to proposed lots, it has ignored that section of its regulations that most directly addresses this question. Section 3.3 of the Chester subdivision regulations is entitled "Streets" and contains regulations concerning both existing and proposed streets. Section 3.3.6, entitled "Existing Streets" provides: "Proposed subdivisions abutting on an existing Town street or State Highway shall provide for proper widening of the right

---

[4] Under General Statutes § 8-26, a planning commission may also "modify and approve" a subdivision application. See also General Statutes § 8-25 (a) (allowing planning commission to adopt regulations regarding conditional approval of certain subdivision plans); *Carpenter* v. *Planning & Zoning Commission,* 176 Conn. 581, 409 A.2d 1029 (1979) (discussing circumstances under which a commission may impose conditions on subdivision approval).

of way of such street or highway to the width appropriate for the classification given such street or highway by the Commission. Such provision shall be in the form of a deed dedicating sufficient land to the Town to enable the Town to widen the street or highway to the appropriate width from the center line of the street or highway to the proposed property lines of the subdivision.''

This regulation addresses the very situation present in this case; the proposed subdivision that is abutted by an unimproved, inadequate town road. The regulation responds to this problem by requiring the applicant to deed to the town sufficient land to enable the town to widen the road to the appropriate width—a requirement that the record indicates the plaintiff was ready to fulfill.[5] The quid pro quo contemplated by this regulation is apparent; the landowner is to supply the land and it is anticipated that the town will improve the road.[6] Thus, while it might have been possible, consistent with the power granted to municipalities under General Statutes § 8-25, for the town of Chester to adopt more stringent subdivision regulations that would require an applicant to ensure that existing streets provide adequate access to and from the subdivision, the

[5] Included as part of the plaintiff's subdivision proposal was the statement: "The applicant will convey to the town of Chester a strip of land 8½ feet wide along the frontage of the subdivision property on Turkey Hill Road to the town of Chester for purposes of widening of the existing road." The defendant has not claimed that that strip was inadequate to widen the road properly.

[6] The regulation does not purport to require the town to improve the public road. As the trial court recognized, the planning commission has no authority over the maintenance of a public road. See General Statutes § 13a-99 (town to maintain public roads); General Statutes § 8-25 (authority of planning commission). While the regulation does not attempt to compel the town to widen and improve a public road, it appears to contemplate that a town will do so pursuant to its duty to build and repair all necessary highways and bridges. General Statutes § 13a-99; see also General Statutes §§ 13a-63, 13a-103 (remedies for failure to maintain highway; parties who benefit from improvement may be assessed a portion of the costs).

present subdivision regulations do not require such action. Cf. *Nicoli* v. *Planning & Zoning Commission*, 171 Conn. 89, 92–94, 368 A.2d 24 (1976) (subdivision regulations of the town of Easton construed as properly authorizing condition requiring applicant to connect subdivision roads with town roads).

The defendant's reliance on the general regulations requiring lots to be "buildable" is unavailing. While this claim might have some credence in the absence of a particular regulation concerning inadequate access roads,[7] it has no merit in light of the specific regulation, § 3.3.6, that addresses this issue. Under accepted principles of statutory construction, which also apply to local ordinances; *East Lyme* v. *Waddington*, 4 Conn. App. 252, 259 n.2, 493 A.2d 903, cert. denied, 197 Conn. 811, 499 A.2d 61 (1985); provisions of special applicability take precedence over those of general applicability. *Patry* v. *Board of Trustees*, 190 Conn. 460, 468, 461 A.2d 443 (1983); *Szabo* v. *Beregszazy*, 9 Conn. App. 368, 370, 519 A.2d 81 (1986). Under the circumstances of this case, therefore, the particular requirements of section 3.3.6 regarding public road access would prevail over any requirements that might be

---

[7] We note, nevertheless, that we would have difficulty in construing the general regulations relied on by the defendant; see footnotes 1–3, supra; as containing any requirements concerning the condition of public access roads. These regulations refer to the character of the building lots themselves, and not to the condition of public access roads to those lots. "Zoning regulations, being in derogation of common-law property rights, should not be extended by construction beyond the fair import of their language and cannot be construed to include by implication that which is not clearly within their express terms." *J & M Realty Co.* v. *Board of Zoning Appeals*, 161 Conn. 229, 233, 286 A.2d 317 (1971). Furthermore, a subdivision regulation, like a statute must be both " 'as reasonably precise as the subject matter requires' " and " 'reasonably adequate and sufficient to guide the commission and to enable those affected to know their rights and obligations.' " *Sonn* v. *Planning Commission*, 172 Conn. 156, 159, 374 A.2d 159 (1976).

gleaned from the general requirements regarding buildable lots in sections 2.0, 3.1 and 3.2.

The defendant also claims that the court erred in concluding that a local planning and zoning commission, when reviewing a subdivision application of land that abuts a town road providing the sole access to the subdivision, may not deny the approval solely on the basis of the condition of the road no matter how inadequate its condition. The trial court, following the Superior Court decision by former Chief Justice House in *Pope* v. *Planning & Zoning Commission,* 5 Conn. Law Trib. No. 49, p. 16 (Judicial district of Middlesex, No. 8239) (1979), found that a municipality has a statutory duty to maintain safe highways, and that a planning commission cannot base its decision on the assumption that a municipality will not abide by this duty. We need not decide, however, whether the trial court was correct in following the reasoning of the court in the *Pope* decision, because we agree with the additional finding of the trial court that by complying with section 3.3.6 of the Chester subdivision regulations, the plaintiff has fulfilled the requirements set forth in the regulations concerning adequate public access.

There is no error.

In this opinion BIELUCH, J., concurred.

BERDON, J., dissenting. I disagree with the majority. The statute governing subdivisions mandates that the defendant adopt regulations which "provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety . . . . " General Statutes § 8-25. Section 3.2 of the Chester subdivision regulations specifically provides that the "proposed lots shall be of such . . . location . . . and character . . . that they can be occupied and used for building pur-

poses without danger to the health and safety of the occupants and the public."[1] It is clear that before the subdivision plan for the plaintiff's property abutting Turkey Hill Road could be approved, the defendant was required to find that the land could be occupied and used for building purposes without danger to the safety of those who would occupy the buildings and the public.

Turkey Hill Road is the only means of access to the plaintiff's proposed subdivision. Acting in its administrative capacity; *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917 (1967); the defendant determined that Turkey Hill Road would not provide a safe means of ingress and egress for the property. It unanimously voted to deny the subdivision application of the plaintiff because Turkey Hill Road was "inadequate to provide safe access and egress to the proposed lots for either resident or emergency vehicles." Since the plaintiff's subdivision plan failed to satisfy the safety requirements of the subdivision regulations, the defendant correctly denied the application. *Westport* v. *Norwalk,* 167 Conn. 151, 157–58, 355 A.2d 25 (1974).

The majority, however, merely states that because another Chester subdivision regulation, § 3.3, requires an applicant to dedicate sufficient land abutting the proposed subdivision to the town to enable the town to widen the road to an appropriate width, the defendant is precluded from denying the application on the grounds that the road will not provide safe ingress and egress to the subdivision. This gives § 3.3 of the Chester subdivision regulations too broad a reading. Section 3.3 is concerned solely with the width of the road and not with safety per se or other factors which could have an effect on the issue of safety. Indeed, in the present case, the defendant not only found that Turkey Hill

---

[1] See footnote 2 of the majority opinion for the full text of this section of the Chester subdivision regulations.

Road was a single lane, unpaved and unimproved road, but that it also was effectively a dead end road. Turkey Hill Road continues into the town of Haddam, where it is known as Wig Hill Road. The defendant found that Wig Hill Road was in such condition that it "effectively made the Chester portion of the road 'dead end.' "

Thus, even if the town of Chester under § 3.3 had an obligation to widen and improve the road, which the majority concedes that under the subdivision regulations, at least, it does not, the defendant found Turkey Hill Road would still present a safety hazard because it was, in effect, a dead end road.

The trial court, in sustaining the plaintiff's appeal, held that a planning and zoning commission could not refuse to grant a subdivision solely on the basis that the abutting public road was inadequate because the town has a duty to maintain its roads.[2] This misconceives the extent of the town's duty. It has long been held that a town's duty to maintain its roads is statutory; *Wethersfield* v. *National Fire Ins. Co.*, 145 Conn. 368, 371, 143 A.2d 454 (1958); but that the statute, General Statutes § 13a-99, only requires the town to maintain the road in a "reasonably safe condition for public travel." *Stamford Dock & Realty Corporation* v. *Stamford*, 124 Conn. 341, 344, 200 A. 343 (1938). The duty of maintaining a road in a reasonably safe condition depends on numerous factors, including the extent and nature of the public travel. *Howe* v. *Ridgefield*, 50 Conn. 592, 596 (1883); see *Albright* v. *MacDonald*, 121 Conn. 88, 94, 183 A. 389 (1936). It does not require the town to maintain, improve or reconstruct a road in order to accommodate a proposed sub-

---

[2] The majority found it unnecessary to decide this issue which had its genesis in *Pope* v. *Planning & Zoning Commission*, 5 Conn. Law Trib. No. 49, p. 16 (Judicial District of Middlesex, No. 8239) (1979).

division, but rather the obligation is to provide safe travel on public roads based upon the above considerations. Cf. *Luf* v. *Southbury,* 188 Conn. 336, 347–48, 449 A.2d 1001 (1982).

Requiring a local government, at its own expense, to improve a road because an adjoining property owner wishes to subdivide his or her land could result in an onerous financial burden on rural towns. Some of these unimproved town roads are merely the width of a cart or foot path. Furthermore, this burden could encourage towns to abandon these roads; General Statutes § 13a-49; which would extinguish the right of the public to cross over them. General Statutes § 13a-55; *Luf* v. *Southbury,* supra, 344. Yet, many times these roads, although not able to accommodate vehicular traffic, can serve important public recreational purposes.

Moreover, a property owner is not without a remedy if a town refuses to improve a public road or seeks to extract unreasonable considerations to do so. Pursuant to General Statutes § 13a-103, six or more citizens may apply to the Superior Court to compel necessary improvements, and a town may be ordered to improve a road if it is found that public convenience so requires. *Goodspeed's Appeal,* 75 Conn. 271, 274, 53 A. 728 (1902); see *Luf* v. *Southbury,* supra, 348. The statute provides, however, that the benefits derived from the improvements of the road be assessed against the parties that are benefited. General Statutes § 13a-103. Any rule which would require a town to improve a road merely because an abutting property owner wishes to subdivide his or her property, which could involve the improvement of several miles of road to accommodate a small subdivision situated in the middle of the woods, without taking into consideration the overall public convenience and ignoring the safety of the persons who will eventually occupy the subdivision,

tips the balance between the rights of the property owner and the public which the legislature sought to achieve.

I respectfully dissent.

