[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal by the plaintiff, Scott Gardiner, from the decision of the defendant Waterford Planning Zoning Commission (the "PZC") approving the application of defendant Reynolds Metals Development Corporation ("Reynolds" or the "applicant") for a 26-lot non-residential subdivision and waiver of section 5.6.6 of the Subdivision Regulations for property located at 124 Parkway South, IP-1 zone. (ROR #133, Minutes, p. 3.)
The principal issue on appeal is whether the PZC acted illegally, arbitrarily or in abuse of its discretion in approving Reynolds' subdivision application.
I. PROCEEDINGS CT Page 5783
Reynolds applied to the PZC for approval to subdivide approximately 188 acres of land consisting of the former Waterford-New London Airport into 26 building lots, and for a waiver of section 5.6.6 of the Waterford Subdivision Regulations, which concerns the length of cul-de-sacs. (ROR #2, "Project Summary," "Evidence of Submittals"; #3, pp. 4,8-10.) The subject property is located at 124 Parkway South, Waterford, Connecticut. (ROR #3, p. 4.) The property is located in an IP-1 (general industrial park) district, which has a minimum lot size of 80,000 square feet. (ROR #3, p. 4; #132, Zoning Regulations, section 2.1.)
The PZC held a public hearing on January 22, 1990, which was continued to February 13, 1990 and to March 5, 1990. (ROR #3; #4; #5; #6.) Notice of the hearing was published in The Day on January 10 and January 17, 1990, in accordance with section 8-26 of the General Statutes. See Connecticut General Statutes Section 8-26 (rev'd to 1989, as amended by Connecticut Public Acts No. 89-356, section 14 (1989)). (ROR #6.) On April 9, 1990, the PZC approved Reynolds' subdivision application and request for waiver and attached modifications and conditions to that approval. (ROR #133, p. 3 and Attachment B.)
Reynolds also sought and received a permit to conduct regulated activities from the Waterford Conservation Commission. Plaintiff Gardiner has appealed that decision as well. See Gardiner v. Waterford Conservation Commission, et al, D.N. 513025. Robert Fromer, as an intervenor, also appealed from the Conservation Commission's decision (D.N. 512967) and from the PZC's decision (D.N. 514151). Also, a motion to consolidate all four appeals for trial was granted by the Court, Axelrod, J., on July 9, 1990. (See Court File, D.N. 513025.) This memorandum addresses only the appeal of plaintiff Gardiner from the decision of the PZC. The four appeals were heard and argued together on January 29, 1991,[1]
but have been decided separately.
II. AGGRIEVEMENT
Aggrievement is a prerequisite to maintaining an appeal. See Smith v. PZB, 203 Conn. 317, 321 (1987).
A party is statutorily aggrieved if he owns land which abuts or is within 100 feet of any portion of the land involved in any decision of the board. Connecticut General Statutes Section 8-8.
Plaintiff alleges that his property abuts the applicant's property and testified at the hearing held on CT Page 5784 January 29, 1991 before this Court that he owns property which abuts the applicant's property and introduced a copy of his warranty deed (Exhibit A).
Plaintiff Gardiner is therefore aggrieved.
III. SCOPE OF REVIEW
A trial court is not at liberty to substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. PZC, 206 Conn. 554, 572-73 (1988). The Court may only determine whether the agency has acted illegally, arbitrarily, or in abuse of its discretion. Id. at 573. "The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Id. at 265. "The essential question therefore is whether the commission's decision is reasonably supported by the record. Courts do not substitute their own judgment for that of the commission so long as honest judgment has been reasonably and fairly exercised after a full hearing." Westport v. Norwalk,161 Conn. 151, 161 (1974).
The commission's action is to be sustained if any one of the reasons stated is sufficient to support the decision. Primerica v. PZC, 211 Conn. 85, 96 (1989). The burden of proof to show that the board acted improperly is upon the plaintiff. Adolphson v. ZBA, 205 Conn. 703, 707
(1988); Burnham, 189 Conn. 261, 266 (1983).
PLAINTIFF'S CLAIMS ON APPEAL
IV. DUE PROCESS CLAIMS
A. LACK OF FINAL APPROVAL CLAIM
The plaintiff initially contends in his brief that the action of the PZC was illegal because it violated fundamental due process requirements. He specifically claims that the April 9, 1990 action by the PZC did not constitute final approval of the subdivision plan pursuant to section 1.15 of the subdivision regulations. Plaintiff argues in his brief, p. 16, that the applicant was given the opportunity to submit additional substantive engineering data, ex parte, following the close of the public hearing but prior to final approval of the subdivision plan. Plaintiff therefore contends that the procedure utilized by the PZC in approving the application, with conditions and modifications, is a patent violation of the fundamental principles of due process. He also claims that the engineering data which was submitted by CT Page 5785 the applicant, ex parte, following the close of the public hearing is substantive and beyond the scope of the evidence presented at the public hearing, and therefore, the plaintiff is severely prejudiced as a result of the submission of this information. Plaintiff further claims that he was not given the right to review and respond to said additional data at a meaningful time in the proceedings. See Plaintiff's brief, p. 16. Plaintiff further asserts in his brief, page 21, that the prejudice to him in this matter is the same prejudice demonstrated by the plaintiff in Blaker v. PZC, 212 Conn. 471,478 (1989), as he has a substantial interest in the outcome of the proceedings, and was denied the opportunity to rebut important information submitted, ex parte, by the applicant following the close of the public hearing, and prior to final approval of the modified subdivision plan.
The defendant Reynolds contends in its brief, page 16, that the plaintiff's due process argument is misplaced, and argues that in cases concerning subdivision applications, procedural due process rights are very limited, citing Reed v. PZC, 208 Conn. 431, 433 (1988). Reynolds further contends in its brief, page 17, that the plaintiff has no right to rebut, review and/or respond to the modifications that will be presented by the applicant or a PZC when acting on subdivision applications, acts in an administrative capacity, and not as a legislative, judicial or quasi-judicial agency. Reynolds claims that the only issue presented is whether the plan, as modified, will conform to the regulations of the Commission and that in this case, the facts show that the plaintiff's due process rights were not violated.
Reynolds also contends in its brief, pages 16 through 18 that "(a)ll `final approval,' as defined in the regulations, (ROR #132, section 1.15) means is that only after the bonds are posted, the additional modifications are made to the plan and the supplemental documents are presented, will the chairman sign the mylar map which will then allow it to be filed with the town clerk. This standard procedure is how the approval of the Commission is translated into the final documents that are recorded in the land records of the town clerk's office. There is no substantive data which is presented; only that which the Commission has ordered be put on the plans as a result of its approval with modifications and conditions. If this were not the case, there is no way to make the modifications without another hearing. Furthermore, (defendant adds), if this were the case, then this entire appeal procedure is premature." Defendant Reynolds' brief, pp. 16-18.
Subdivision Regulation section 1.15 states that: CT Page 5786
 1.15 FINAL APPROVAL shall mean all the following:
 A. Vote of the Commission to approve or to modify and approve the plan of subdivision.
 B. Posting of a bond to cover the cost of subdivision improvements and erosion and sedimentation control measures unless such improvements have been completed by the applicant.
 C. Endorsement of approval by the Chairman or Secretary of the Commission on a mylar, linen or muslin backed copy of the plan of subdivision for filing with the Town Clerk and on a mylar copy and six (6) white print paper copies of the plan for use by the Commission and other municipal agencies, all of such copies to be furnished by the applicant.
 D. Submission of all data required by the Commission as a condition of approval, such as but not limited to, deeds, convenants (sic) and restrictions, revised plans, and homeowners association bylaws.
The defendant PZC ordered in its decision that the applicant submit certain specific data to the PZC. See (ROR #133). It is clear that section 1.15 contemplates that the PZC may require additional information as a condition of its "decision," which must come after the close of the public hearing and after its decision. "In passing upon a subdivision application, the Commission is controlled by the regulations it has previously adopted." Westport v. Norwalk, 167 Conn. 151,155, 157 (1974). Therefore, if the plaintiff were to claim that the PZC may not require additional data as a condition of its decision, which must be after the public hearing, then plaintiff would have to challenge the regulations which allows the PZC to do so. The proper means to challenge a regulation is by way of a declaratory judgment action, not an administrative appeal. See Aaron v. Conservation Commission, 178 Conn. 173, 178 (1979).
Declaratory judgment actions may be used for the determination of constitutional rights and for the determination of the constitutionality of state Legislative or CT Page 5787 executive action. Horton v. Meskill, 172 Conn. 615, 626
(1977). Declaratory judgment actions are also appropriate for determining questions concerning the validity of regulations of an administrative agency. Farmington Savings Bank v. ZBA,189 Conn. 727, 736 (1983).
Plaintiff herein does not seek a declaratory ruling on the validity of section 1.15, nor is declaratory relief appropriate in an administrative appeal. See Aaron, supra,178 Conn. at 178. Therefore, the PZC did not violate section 1.15 as its action in ordering additional data and changes was specifically allowed by that section.
B. EX PARTE EVIDENCE CLAIM
Turning to the plaintiff's claim regarding the illegal ex parte submission of additional substantive engineering data following the close of the public hearings but prior to final approval of the subdivision plan, the plaintiff contends in his brief, p. 16, that the procedure utilized by the PZC in approving the application, with conditions and modifications, is a patent violation of fundamental principles of due process. Plaintiff asserts that the engineering data submitted by the applicant following the close of the public hearing was both substantial and ex parte, and is beyond the scope of the evidence presented at the public hearing, and that the plaintiff is severely prejudiced thereby because he has not been given the right to review and respond to this additional data at a meaningful time in the proceedings. (Plaintiff's Brief, p. 16.)
Reynolds first contends in its brief, p. 19, that the record reflects that no such evidence was submitted after the close of the public hearing. Defendant contends that the last public hearing was held on March 5, 1990 (ROR #5) and the decision of the PZC was rendered on April 9, 1990 (ROR #133). Reynolds further states in its brief, p. 19, that "(w)hat will be presented as a result of the decision are the plans with the modifications as required by the approval; all of which were discussed, at length, with the plaintiff and the commission during the hearing process." (Defendant's Brief, p. 19.)
Reynolds further states in its brief, p. 22, that it is ironic that most of the modifications that are of concern to the plaintiff are the very issues which he raised before the PZC. This Court agrees with the defendant, as the record shows no such information was received between the close of the hearing and the deliberations of the Commission, but was, in fact, required by the PZC as part of its decision. CT Page 5788
As is readily apparent, the Commission's 13-page decision approving the applicant's subdivision was detailed and comprehensive. The plaintiff's view is that the PZC's decision which required the applicant to submit revisions to its application, including data relating to Detention Basins H and I, the Devonshire and Waterford Landfills, and water quality and monitoring constitute the submission of ex parte "substantive data" in violation of plaintiff's due process rights.
The plaintiff heavily relies on the cases of Carlson v. Fisher, 18 Conn. App. 488 (1989); Pizzola v. Planning and Zoning Commission, 167 Conn. 202 (1974); and Langbein v. Planning Board, 145 Conn. 674 (1958), in support of his position. In Carlson, supra, the issues of drainage and potential flooding were discussed at great length in the hearing before the PZC.
For the first time, after the hearing, but before its decision, the Commission received a detailed water drainage plan, and afforded the plaintiff in that case no opportunity to examine it or rebut it, and approved the subdivision. Carlson, however, is inapposite to this case, because here, a detailed drainage plan was submitted as part of the applicant's subdivision proposal, and not prior to the agency's decision, while in Carlson, various vaguely described drainage plans were discussed in the hearing, and the drainage report was submitted prior to the Board's decision, without any details. And, in Pizzola, supra, where traffic was a concern, the Commission received a traffic report after the hearing, which it considered in making its decision, which the opponent had no opportunity to rebut. Pizzola is also therefore inapposite for the same reasons as Carlson, supra.
Also, in Langbein, supra, at 681, the Commission, as here, considered no evidence of any kind after the public hearing. In this case, as in Langbein, no ex parte evidence was presented to or received by the Board after the public hearing and before its decision, and therefore, although these cases cited by the plaintiff stand for the general principles that the plaintiff advances, his reliance upon them is misplaced.
The PZC in this case was authorized by General Statutes Section 8-26, after the public hearing, to approve the application as submitted, disapprove the application, or modify it and approve it as modified. Carpenter v. Planning and Zoning Commission, 176 Conn. 581, 592 (1979); Moscowitz v. Planning and Zoning Commission, 16 Conn. App. 303, 308-9
(1988). As previously seen, section 1.15 D of the subdivision CT Page 5789 regulations specifically authorizes the PZC to require "as a condition of approval" various types of data and revisions.
In two cases concerning "conditionally approved" subdivision plans, the Supreme Court treated the boards' decisions not as conditional subdivision approvals, but as approvals of plans as modified by the board. See Nicoli v. Planning and Zoning Commission, 171 Conn. 89 (1976) (granting approval of a subdivision conditional on the proposed subdivision road being connected to a public highway when that road was extended); and Crescent Development Corporation v. Planning Commission, 148 Conn. 145 (1961) (subdivision approved subject to changes in proposed roads and accessways). As the court said in Moscowitz, supra, at 311, ". . . it is the nature of the underlying action taken by the planning commission that will determine its legality, not whether it is phrased in terms of a "modification" or "conditional approval." The requirements made a part of the PZC's decision approving the subdivision in this case were within the control of the PZC or the applicant, as in Crescent Development and Nicoli, supra. As the Moscowitz court further stated at p. 311, "The commissions in Crescent Development and Nicoli were found to possess the authority to require alterations in the planned road layouts submitted to them on the basis of their legitimate concerns (with traffic flow)." In Moscowitz, also relied upon by the plaintiff, the court disapproved a condition prohibiting future resubdivisions, holding that it had no rational relationship to the `. . . health, safety and public welfare consider actions set forth in General Statutes Section 8-25.' Id. 311. Moscowitz does not help the plaintiff as the modifications required by the Commission here, without exception, have such a rational relationship. Moreover, the Moscowitz court held, at page 309, that a planning commission is authorized to take three courses of action, one of which is ". . . making changes to the application to ensure compliance with the subdivision regulations and compatibility with the municipality's comprehensive plan, and then approve the application as so modified." The Commission's action in modifying the application and approving it as modified was therefore authorized.
The Court finds that the PZC had a substantial basis in the record to modify the subdivision plan, so that it would be certain to comply with the applicable subdivision regulations. The modifications all relate to matters that were discussed at great length during the hearings, by experts called by both sides. In large part, the PZC ordered the modifications to meet concerns of the plaintiff. The PZC is entitled to rely on its technical and professional staff for assistance in determining whether support data submitted CT Page 5790 as part of the modifications are in compliance with the regulations, and the regulations themselves provide for mechanisms to ensure continued compliance. See Sections 4.57; 6.
The plaintiff was afforded ample opportunity during the hearings to offer testimony and cross examine witnesses with respect to the detention basins, the landfill(s) and the water quality and monitoring issues.
In the case of Reed v. PZC, 208 Conn. 431, 433
(1988), the Connecticut Supreme Court stated that:
 a municipal planning commission, in exercising its function of approving or disapproving any particular subdivision plan, is acting in an administrative capacity and does not function as a legislative, judicial or quasi-judicial agency, which would require it to observe the safeguards, ordinarily guaranteed to the applicants and the public, of a fair opportunity to cross examine witnesses, to inspect documents presented, and to offer evidence in explanation or rebuttal and of the right to be fully apprised of the facts upon which action is to be taken, as exemplified in such cases as Parish of St. Andrew's Protestant Episcopal Church v. Zoning Board of Appeals, 155 Conn. 350, 232 A.2d 916 (1967), and Wadell v. Board of Appeals, 136 Conn. 1, 68 A.2d 151 (1949). See 2 Am. Jur.2d, Administrative Law, Sec. 403. The planning commission, acting in this administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulations adopted for its guidance. Langbein v. Planning Board, 145 Conn. 674, 679, 146 A.2d 412 (1958). If it does not conform as required, the plan may be disapproved.
Id. at 433, citing Forest Construction Co. v. PZC, 155 Conn. 669,674-75 (1967).
It is evident that the PZC went further than it was legally obligated to do in allowing the plaintiff to cross examine witnesses, to inspect documents and submit his own documents in explanation or rebuttal. The credibility of the CT Page 5791 witnesses, even those who are experts, is solely for the PZC to determine. The PZC acted within the authority granted it by General Statutes Section 8-26 and Section 1.15D of its own regulations in approving the subdivision with modifications and, even if the modification data can be considered an ex parte submission, the plaintiff has not met his burden of proof that he has been prejudiced thereby. See Hawkes v. TP Z,156 Conn. 207, 212-213 (1968).
 V. FAILURE OF SUBDIVISION APPLICATION TO COMPLY WITH SUBDIVISION REGULATIONS
Plaintiff contends in his brief, p. 25, that the applicant failed to substantiate that a secondary emergency access road to the proposed site existed as a matter of record. Plaintiff further claims that the applicant failed to design a roadway system sufficient to comply with the provisions of section 5.6 of the subdivision regulations, see ROR #132, and therefore the inadequacy of a road design for the subdivision to provide safe access to the site was sufficient reason to deny the subdivision plan.
Plaintiff cites that portion of section 5.6.6 of the subdivision regulations (ROR #132, which provides that n(a) cul-de-sac shall not exceed eight hundred (800) feet in length unless it is of a temporary nature and is planned for extension and can reasonably be expected to connect with an existing or proposed road on adjoining land." (ROR #132, sec. 5.6.6.) Plaintiff also cites section 5.7 of the subdivision regulations which permits the PZC to approve waivers to the subdivision regulations where it finds that extraordinary hardships or practical difficulties may result from compliance with the subdivision regulations.
Plaintiff suggests that the staff recommended that the roadway system shown on the applicant's subdivision plan and the request for a waiver of the cul-de-sac limit requirement be approved only if a secondary emergency access to the site was provided as set forth in the Revised Subdivision Plans. (ROR #22, 24.) Fire Marshall Comments; ROR #9, Town Planner Comments, p. 4; ROR #87, Waterford Landing, Illustrative Master Plan with Proposed Wetland Regulated Activities.
The PZC in its decision of approval of the applicant's proposed subdivision, required that in order to permit the waiver of section 5.6.6 of the subdivision regulations, the applicant had to comply with certain specific conditions, one of which required the applicant to provide emergency access, pedestrian access and a utility easement CT Page 5792 from the edge of Commerce Way to the south property line, to allow for that connection to Devonshire Drive, as indicated in the plan record. (ROR #133 — Modifications B, 3, p. 6.)
Section 5.7.1 A of the subdivision regulations, entitled `Waiver of Requirements' provides that the PZC shall not approve waivers unless it shall make findings based upon evidence presented to it that: (A) The granting of the waiver will not be detrimental to the public safety, health, or welfare, or have a significant effect on other adjacent property. (ROR #132, Sec. 5.7.1A.)
Section 5.7.2 of the Subdivision Regulations, entitled "Conditions" provides that in approving waivers, the PZC may require such conditions as will, in its judgment, secure substantially the objectives of the standards or requirements of these Regulations. (ROR #132, sec. 5.7.2.)
The record reflects the PZC's concerns with the public safety, health and welfare, and the effect the approval of waivers would have on adjacent property. The PZC implicitly found that there would be no detrimental effects; indeed, it determined that extension of nonresidential traffic into or through residentially zoned lands would be eliminated. There is a substantial basis in the record for these findings. (ROR #133, Findings, B, 1-3.)
Furthermore, although the record does not reflect that a secondary emergency access road to the proposed site exists as a matter of record, the PZC required as part of its approval that the applicant provide an emergency access to Devonshire Drive. (ROR #133, Modification B, 3, p. 6.)
The PZC also required that the applicant prepare a detailed open space improvement plan showing among other things, the plans for connecting emergency access and water to Devonshire Drive as a result of the modifications imposed by the PZC in its decision. (ROR #133, D, 1; E, 2, D.)
The applicant, therefore, has to comply with the PZC's stated modifications by obtaining the necessary revised plans and other documents, and then submitting them to the PZC prior to the endorsement and filing of the modified subdivision plans in the office of the Town Clerk. (See ROR #133, Final Plan Submission Requirements, #3.)
Accordingly, the PZC did not act illegally, arbitrarily or in abuse of its discretion in requiring that the applicant provide an emergency access road to the proposed site; it only modified applicant's initial proposal of a CT Page 5793 secondary emergency access road as part of its subdivision approval. (See ROR #85, Subdivision Plans, ROR #87, Revised Subdivision Plans.)
Indeed, similar actions were held to be within a commission's authority in Crescent Development and Nicoli, supra.
Plaintiff next claims in regard to the detention basins that section 8-25 of the General Statutes provides that proper provision shall be made for the drainage of stormwater from a proposed subdivision. (Plaintiff's Brief, p. 25.)
Sections 4.5.3, 4.5.4, 5.1 and 5.3 of the subdivision regulations (ROR #132), set forth the PZC's authority to govern design standards for the construction of detention basins.
The record does reflect that there was a hotly contested issue as to whether applicant's detention basin design conformed to the design standards set forth in the Connecticut Guidelines for Soil Erosion and Sediment Control. (ROR #30, letter dated February 26, 1990.)
It is well established that the determination of factual issues and the credibility of witnesses, even expert witnesses, are within the province of the commission. Spectrum of Connecticut, Inc. v. Planning and Zoning Commission,13 Conn. App. 159, 163 (1988). Debatable questions of fact are therefore within the commission's authority to resolve. Westport v. Norwalk, supra, 161. The commission found:
 Erosion control certification (1) the Commission finds that the plans, with modifications listed herein, are sufficient to certify compliance with the erosion control regulations (4-5-3). R-133; Att. -B, pg. 4E1).
Therefore, the defendant PZC required that the applicant meet the construction design criteria as stated in the Connecticut Guidelines for Soil Erosion and Sediment Control. (ROR #133, Approval.)
Plaintiff contends in his brief, pages 26-27, that the detention basin design failed to meet SCS minimum design criteria mandated by section 4.5.5.1 of the subdivision regulations. Plaintiff further argues that the applicant did not substantiate mandatory compliance with detention basin design criteria as a matter of record, and therefore, the CT Page 5794 inadequacy of the detention basin design was sufficient reason to deny the subdivision plan. (Plaintiff's Brief, pp. 26-27.)
Record Item #133, Final Plan Subdivision Requirements requires that the following data shall be submitted to the PZC prior to the endorsement and filing of the modified subdivision plans in the office of the Town Clerk:
 (6) Submission of all additional analysis for the detention basins discharging to Nevins Brook to insure that the Guidelines for Erosion Control are complied with.
 (7) Maintenance and water quality monitoring program for the basins. (ROR #133, p. 13.)
The record further reflects that the PZC required as a condition of approval that:
 "(6) The stormwater quality basins shall meet the construction design criteria for detention basins based on the Guidelines for Sediment and Erosion Control. . . ."
(ROR #133, F) Erosion and Sediment Control Plan, #6).
At the hearing held before the PZC on March 5, 1990, plaintiff's expert Mr. Neftali Soto, a project engineer for Total Technology, Incorporated, testified that the basins do not have the appropriate size nor the appropriate volume. (ROR #5, p. 18.) Furthermore, Mr. Soto stated that the basins do not meet the SCS guidelines. (ROR #5, p. 18.);
The PZC acted legally in requiring that the applicant comply with SCS design criteria, and correctly in requiring the applicant to submit to the PZC all data prior to the endorsement and filing of the modified subdivision plans in the office of the Town Clerk.
Although the detention basin design as submitted by the applicant in its original plans may have failed to meet SCS Guidelines, the PZC correctly required compliance with the SCS Guidelines as a modification of the plan, which it then approved.
As previously noted, section 8-26 permits the commission to ". . . approve, modify and approve or disapprove CT Page 5795 any subdivision. . . ." The plaintiff points to no case where a court overruled a commission's approval of a modified subdivision plan which required a nonconforming component to comply with the regulations as part of its approval. The Commission's authority to modify subdivision plans includes not only the authority to require modifications of plan features which comply with the regulations but also modifications of features which do not comply. See Moscowitz, supra, 309. So long as the subdivision plan as modified then complies, the PZC has the power to approve it.
Plaintiff next claims that the action of the PZC was illegal because the substantial evidence submitted to the PZC regarding water quality mandated a denial of the subdivision plan. Specifically, plaintiff contends that the effect of the leachate plume emanating from Devonshire Landfill and Waterford Airport Landfill on Detention Basins I and II was not addressed in any fashion by the applicant. Plaintiff asserts in his brief, p. 28, that this water quality issue was of particular importance because stormwater from the site flows into Nevins Brook and then to the potential municipal wellfield located downstream from the site. (Plaintiff's Brief, p. 28, citing ROR #2, Supplemental Info. Booklet.)
Plaintiff further asserts in his brief, p. 28, that the degradation of water quality, as related to a significant municipal wellfield, is an important health, safety and welfare concern which must be properly addressed in the context of a subdivision plan review. (Plaintiff's Brief, p. 28, citing Conn. Gen. Stat. See. 8-25, requires that the commission shall adopt regulations covering the subdivision of land.)
Connecticut General Statutes section 8-25 (a) states in relevant part that: "(s)uch regulations shall provide that the land to be subdivided shall be of such character that it can be used for building purposes without danger to health or the public safety, that proper provisions shall be made for water, drainage and sewerage and, in areas contiguous to brooks, rivers or other bodies of water subject to flooding, . . . that proper provision shall be made for protective flood control measures. . . ." Connecticut General Statutes Section 8-25 (a).
The plaintiff, in claiming that the application should have been denied due to the failure of the applicant to resolve water quality and control issues, appears to be rearguing what was already addressed in his appeal from the decision of the Conservation Commission. The concerns of water quality and control were previously thoroughly addressed by CT Page 5796 the Conservation Commission. (See ROR #133, Findings, D.) Additionally, the PZC stated in its findings, p. 4, that it reviewed the Inland Wetlands permit and had given due consideration to the issuance of the permit and the recommendations made by the Conservation Commission. (ROR #133, Findings, D F.) The PZC also considered the Conservation Commission's action to be sufficient to require that the landfill be monitored along with the stormwater quality exiting the basins in order to protect and allow for the achievement of the State's water quality goals for the Jordan and Nevins Brook Watersheds. (ROR #133, Findings, F.) See also ROR #133, Modifications A, Conservation Permit, which requires that the plans of record shall be modified to incorporate all modifications and conditions contained in the Waterford Conservation Commission permit and those contained in the PZC's decision, based in part on the Conservation Commission's recommendations. (ROR #133, Modification A.) Moreover, the PZC ordered, as it was entitled to do, that the applicant provide a water quality monitoring plan with monitoring wells to insure that the stormwater quality discharge from the basins were consistent with the submissions, and that steps be taken to correct any deficiencies. The PZC obviously took water quality into consideration.
As stated, when reviewing a subdivision application, a planning commission acts in an administrative capacity. Reed v. PZC, 208 Conn. 431, 433 (1988). If the application for a subdivision conforms to the regulations, the commission has no discretion and must approve it. If the application does not conform to the regulations, then it may be denied. Id. at 433.
The plaintiff has not cited to any violation of the regulation in his last argument, nor has plaintiff claimed or proved that the defendant PZC has failed to act pursuant to any specific regulations regarding water quality or control.
Accordingly, it is inappropriate for this Court to consider plaintiff's last argument as plaintiff has failed to meet his burden of proof in challenging the PZC's decision. See Red Hill Coalition, Inc. v. Conservation Commission,212 Conn. 710, 718 (1989). The plaintiff's claim therefore lacks merit. The PZC has not acted illegally, arbitrarily or in abuse of its discretion. The plaintiff's appeal is dismissed.
TELLER, J.