LAURA M. GAGNON ET AL. *v.* MUNICIPAL PLANNING
COMMISSION OF THE CITY OF ANSONIA ET AL.
(4226)

HULL, DALY and BIELUCH, Js.

Argued December 9, 1986—decision released March 3, 1987

*Edwin L. Doernberger,* for the appellant (defendant Arthur M. Randall).

*Donna Decker Morris,* for the appellees (plaintiffs).

DALY, J. This is an appeal by the defendant landowner[1] from the trial court's ruling that the defendant commission had acted illegally in approving his subdivision application. The defendant claims that the trial court erred (1) in applying an incorrect standard of review, (2) in concluding that the plaintiffs had an enforceable right of way across his land which should have been recognized by the commission, and (3) in depriving the defendant of his property rights without due process of law. We agree.

In February, 1982, the municipal planning commission (commission) of the city of Ansonia approved the defendant's application to subdivide into 32 building lots property owned by him and located on Jewett Street. The plaintiffs,[2] abutting landowners, claimed a

---

[1] The defendant commission has not joined in this appeal. The word "defendant" as used in this opinion refers to the landowner, Arthur Randall, only.

[2] Conrad Gagnon, the coplaintiff, is the husband of the named plaintiff.

right of way over a portion of the proposed subdivision, namely, a driveway leading from their home to Jewett Street.

After a title search revealed no easement of record authorizing the plaintiffs' use of the driveway, the commission granted its approval of the subdivision. The plaintiffs appealed to the Superior Court claiming that the commission decision (1) constituted a wrongful taking of real property rights without due process of law, and (2) was in error in that the subdivision plan did not conform to the commission's regulations. The trial court sustained the plaintiffs' appeal and held that the commission's action prevented them from using the driveway and was tantamount to a municipality condemning a right of way and taking it for a private purpose. In its memorandum of decision, the trial court stated: "The plaintiffs did have some right to use the driveway although how this right existed, whether by deed or prescription, was not clear." The trial court refused to rule on the plaintiffs' second claim since "it was not raised in the complaint or contained in the plaintiffs' brief." We agree with the trial court's disposition of the second issue and note that " 'we are not "bound to consider a claim unless it was distinctly raised at the trial or arose subsequently to the trial." ' " *Robert S. Weiss & Co.* v. *Mullins,* 196 Conn. 614, 617, 495 A.2d 1006 (1985); Practice Book § 4185 (formerly § 3063).

The standard for judicial review of administrative decisions made by local zoning authorities is "limited to a determination, principally on the record before the zoning board, whether the zoning board acted illegally, arbitrarily, or in abuse of the discretion vested in it. . . . [If] a zoning authority has stated the reasons for its actions, the reviewing court ought to examine the assigned grounds to determine whether they are reasonably supported by the record and pertinent to the

considerations the authority was required to apply pursuant to the zoning regulations." (Citations omitted.) *Beit Havurah* v. *Zoning Board of Appeals,* 177 Conn. 440, 444–45, 418 A.2d 82 (1979). These limitations clearly apply to a trial court's review of a zoning board decision as well as to our own. "If it appears that the commission has reasonably and fairly exercised its honest judgment after a full hearing, the trial court must be cautious about disturbing the decision of the authority." *Raybestos-Manhattan, Inc.* v. *Planning & Zoning Commission,* 186 Conn. 466, 469, 442 A.2d 65 (1982); see also *Burnham* v. *Planning & Zoning Commission,* 189 Conn. 261, 265, 455 A.2d 339 (1983). Thus, a trial court must uphold a commission decision unless it was illegal or arbitrary. Often, a court will add "or an abuse of discretion," yet this has been defined by our Supreme Court as a manner of expression which " 'merely points to certain aspects in which the illegality may subsist because the conduct of the board would be in violation of the powers granted to and duties imposed upon it.' " *Zenga* v. *Zebrowski,* 170 Conn. 55, 58, 364 A.2d 213 (1975), quoting *Jaffe* v. *State Department of Health,* 135 Conn. 339, 353, 64 A.2d 330 (1949).

When reviewing a subdivision application, the function of a municipal planning commission is to approve or disapprove a proposed subdivision. This is an administrative function, neither legislative nor judicial. *Forest Construction Co.* v. *Planning & Zoning Commission,* 155 Conn. 669, 674, 236 A.2d 917 (1967). A municipal commission must approve a subdivision proposal if it conforms to the regulations adopted and promulgated by the commission. The proposal must be denied if it does not meet the requirements of the regulations. *Westport* v. *Norwalk,* 167 Conn. 151, 157–58, 355 A.2d 25 (1974). Because a commission is not a court of law, its authority is stringently limited. It can only apply its regulations to the proposals which appear before it. It cannot make law.

The Ansonia zoning regulations require that proposed subdivision plans show the "location and dimension of existing and proposed easements." Regs., Ansonia Municipal Planning Commission, Article IV § 4 (4.6m) as amended August, 1979. An "easement" is defined in those same regulations as "an authorization by a property owner, for the use by another for a specified purpose, of any designated part of his property." Id., Article II, § 5.2. The defendant denied granting authorization to the plaintiffs to use a driveway across his property. In addition, a title search conducted at the request of the commission did not disclose an easement as claimed by the plaintiffs. Thus, there was no "easement," as that term is defined by the Ansonia regulations, for the defendant to include in his proposal. Therefore, the defendant fully complied with the zoning regulations, leaving the commission with no option other than to approve the proposed subdivision.

The commission does not have authority to determine whether the claimed right of way was a legally protected and enforceable prescriptive easement, since that conclusion can only be made by judicial authority in a quiet title action governed by General Statutes § 47-31. The plaintiffs have not followed the procedure available to them to establish title to their asserted prescriptive easement. The aforementioned statute places the burden of instituting that procedure on the party claiming the right of way.

The Ansonia regulations required the defendant to list all "easements" in his proposal. The plaintiffs have not taken the steps necessary to quiet title on their claimed easement. The defendant conformed with the regulations and "[t]he planning commission, acting in its administrative capacity . . . [had] no discretion or choice but to approve [the] subdivision [since] it conform[ed] to the regulations adopted for its guidance."

*Forest Construction Co.* v. *Planning & Zoning Commission,* supra, 674–75; *Westport* v. *Norwalk,* supra, 157–58.

The trial court's conclusion that the plaintiffs had "some right to use the driveway" was beyond its proper scope of review. The commission properly limited its inquiry to whether the defendant's subdivision proposal complied with the regulations. It was correct in not addressing the question of whether the plaintiffs had an easement. The trial court's inquiry should have been limited to whether the commission properly applied the regulations to the subdivision proposal.

We have carefully examined the record before the agency and concluded that it supports the decision reached. The commission's action in approving the defendant's subdivision was not shown to be illegal or arbitrary.

There is error, the judgment is set aside and the case is remanded with direction to reinstate the ruling of the commission.

In this opinion, HULL, J., concurred.

BIELUCH, J., dissenting. I disagree with the majority's conclusion that an examination of the record before the planning commission supports its holding that the agency's action in approving the defendant's subdivision was not shown to be illegal. A comprehensive review of the circumstances, evidence and exhibits presented to the commission in its extended consideration of the subdivision application leads me to the conclusion that the commission acted illegally.

The record of the commission establishes the following facts: The named plaintiff (plaintiff) owns residential property on the east side of and known as 87 Jewett Street in the city of Ansonia. The defendant

Arthur Randall owns a tract of land adjoining the plaintiff's property on the north which he has proposed for a subdivision by application to the named defendant. The physical location of these properties is unique. Jewett Street runs north and south. On August 12, 1918, Jewett Street was widened to fifty feet. As part of this improvement, the east street line was revised adjacent to the properties now owned by the plaintiff and Randall and their immediate neighbors to the north and south. The east street line was relocated to the west and lowered in grade. A retaining wall about 300 feet long and parallel to the new east street line was erected to support an access driveway where the former highway had existed. This driveway continues to exist and is about ten feet wide. It extends along the frontage of the four parcels of land. Ingress, egress and regress to these properties is provided by this driveway from a point on the relocated Jewett Street south of the plaintiff's home to a point about 250 feet north of her property. The land east of Jewett Street is a steep hill rising up from street grade. The plaintiff's home is about eight feet above the level of the street.

On April 29, 1981, Randall filed an application for approval of a subdivision to be known as Berkshire Estate and located on his property, consisting of 17.78 acres, adjoining the residence of the plaintiff. The subdivision was to have access to Jewett Street by "Road B." About eighty feet of the north end of the retaining wall would be removed, the land excavated and "Road B" installed with its beginning at the east line of Jewett Street about eight feet below the level of the adjacent land. The existing driveway would be removed in that area and a retaining wall built on the south side of "Road B" to connect with the present retaining wall at its cutoff point. This would effectively block the plaintiff from going north on the present driveway to enter Jewett Street, or from entering the

driveway to reach her home in a southerly direction from that intersection. In sum, the driveway north of her property would be barred to use by her, her family and her visitors.

At the presentation of the subdivision proposal to the commission on May 26, 1981, a question arose concerning "the maintenance and liability of the present driveway involved." To this inquiry, Randall's engineer, who was describing the subdivision, "stated the property belongs to Mr. Randall and the residents have a right of way to use it." This admission was made notwithstanding the failure of the subdivision map to show the location of this driveway as an easement in accordance with the requirements of § 4.4.6 (m) of the revised subdivision regulations. As a result of its concern, the commission requested further information of the engineer to "[e]stablish driveway right of way."

At the next meeting of the commission, held on June 29, 1981, the plaintiff asserted her right of way over this driveway and a lengthy discussion took place. After the chairman's suggestion that the plaintiff "check into her legal rights," further discussion "was tabled until all the facts could be presented to the Commission by [the plaintiff] and [Randall's engineer]." The subject of the driveway was reported on at the following meeting of the commission on August 31, 1981. Counsel for the developer stated that he "could not find any acknowledgement of an easement across the land for use as access to Jewett St." The plaintiff, in turn, presented a written opinion from her attorneys concerning her rights to this driveway. This memorandum, dated July 14, 1981, concluded as follows: "Based upon our interpretation of the language reserving the reciprocal right to the use of the driveway to the owners of the various parcels along the driveway together with our analysis of the geographical situation of the concerned properties and the surrounding circumstances,

we are of the opinion that each property serviced by the driveway has a reciprocal easement appurtenant to use the driveway, subject to the rights of others for access to and from the respective properties. We further note that the driveway in front of your house was originally a public highway which became a private way for property owners adjoining it in 1918 and thereafter has been so recognized in numerous subsequent deeds and maps." The chairman of the commission thereupon "said this is a legal problem between [Randall] and [the plaintiff]" and announced the time and place of a public hearing on the subdivision.

At the public hearing held on September 28, 1981, the plaintiff objected to the proposal because the proposed retaining wall would block her right of way over the driveway and deprive her of access to and from Jewett Street to the north. Her counsel introduced as an exhibit a letter sent to her by the city engineer on September 13, 1978, more than three years before the hearing. This communication, which related to the status of the driveway in question, was as follows: "Regarding the status of the driveway in front of your house, please be advised that it is not a City road. The street line on Jewett St. was revised and adopted by the Ansonia Board of Aldermen and recorded in their minutes in Volume 9 page 232 on August 12, 1918 making Jewett St. a 50 foot wide roadway. The existing driveway in front of your house then became a private right of way for adjoining property owners as described in the deeds, a copy of which is attached, and also shown on maps of the properties prepared by the previous City Engineer."

Copies of the deeds in the plaintiff's chain of title forwarded by the city engineer with his letter were also presented to the commission for its consideration of the plaintiff's opposition to the subdivision. These were as follows: (1) Warranty deed of George C. Eddy to

Marie M. E. Eddy and Fannie B. Eddy, or the survivor of them, dated September 11, 1915. In this transfer, the property was bounded westerly on the highway known as Jewett Street. (2) Probate certificate of descent of the interest in the property of Marie M. E. Eddy to Fannie B. Eddy, dated November 12, 1943. (3) Warranty deed of Fannie B. Eddy to Marguerite V. Pratt, dated September 17, 1948, conveying the southerly portion of the plaintiff's property. In this transfer, the first by deed since the relocation of Jewett Street in 1918, the property was bounded on the west by "the Easterly line of Jewett Street as laid out by the City of Ansonia." With reference to the driveway under consideration by the commission, this deed contained the following recitals: "Reserving to the grantor, her heirs and assigns, the right to the use of the driveway branching off Jewett Street, along or near the front of said property the same as has been used for years. Said parcel of land is subject to the right of other adjoining landowners to the use of said driveway, the same as has been used for many years for access to their respective properties." (4) Warranty deed of Marguerite V. Pratt to Hedley V. Tingley and Mary C. Tingley, dated October 11, 1956, conveying two adjoining parcels comprising the whole of the plaintiff's property and reciting that the northerly piece was received by certificate of devise from the estate of Fannie B. Eddy, dated September 24, 1951. Both pieces were bounded on the west by "the Easterly line of Jewett Street as laid out by the City of Ansonia." By the terms of this deed, "[b]oth of the above parcels of land are subject to the right of other adjoining landowners to use Driveway along or near the front of said property the same as has been used for many years for access to their respective properties." (5) Warranty deed of Hedley V. Tingley and Mary C. Tingley to Conrad O. Gagnon and the plaintiff, dated Novem-

ber 23, 1960, conveying the same premises described in the deed to the grantors from Marguerite V. Pratt, "[t]ogether with the right to use Driveway in front of said premises." (6) Warranty deed from Conrad O. Gagnon to the plaintiff,[1] conveying his interest in the property acquired from Hedley V. Tingley and Mary C. Tingley. Both of the described parcels were "subject to the right of other adjoining landowners to use Driveway along or near the front of said property the same as has been used for many years for access to their respective properties."

At the conclusion of the hearing, the chairman of the commission announced that "this is a legal matter and he will meet with the Corporation Counsel to obtain legal opinion on the retaining wall . . . and also to discuss the right of way." The public hearing was then recessed. On December 9, 1981, the chairman wrote to the corporation counsel requesting "the legal steps necessary with regard to the contention of neighboring property owners that they have legal rights of way on property that would be crossed over by a retaining wall." The corporation counsel "recommended that a full title search on all property concerned be completed to establish ownership."

At its meeting of February 22, 1982, the commission received a report from Valley Abstract Company reviewing its title search of the properties owned by the plaintiff and Randall. This report was not a certificate of title of ownership of property or of interests therein, but a summary recital of deeds and observations concerning the driveway. In its entirety, this communication to the commission stated as follows: "It would appear from the record that said driveway or passway

---

[1] The copy of this deed consists of the first page only and does not disclose its date, which evidently was before September 13, 1978, the date of its forwarding with the city engineer's report.

was formerly included within the public easement known as Jewett Street. On August 12, 1918 the Board of Aldermen of the City of Ansonia re-established the lines and grades of Jewett Street, thereby excluding from the public easement said driveway or passway, the title to which then reverted to the adjoining landowners.

"An examination of the titles to said properties reveals no instrument containing any grant or easement, one to the other, of said adjoining owners to use that said driveway or passway. The record discloses that at one time the Gagnon title was divided into two separate parcels and that at the time of said division a reservation was made as to the use of said driveway as it affected the remainder of said parcel. Said deed also stated that said property was 'subject to the right of other adjoining landowners to the use of said driveway, the same as has been used for many years for access to their respective properties.' The rights so created, although continuing to be mentioned in the Gagnon deeds, have merged as a result of both titles having been vested in one Marguerite V. Pratt, and subsequently in Laura Gagnon.

"In summary, *it would appear that there is no specific grant from any owner in the chain of title of the Randall property to any owner in the chain of title of the Gagnon property.* There is evidence however of usage for access and the rights of Gagnon in and to that portion of the driveway as is located on the Randall parcel may be of a prescriptive nature and could possibly be enforced in a court of law having jurisdiction. It may be of interest to note that an identical situation existed at the opposite end of the driveway between two adjoining owners in 1969 and a lawsuit resulted to determine the rights. It is my recollection that the court found that prescriptive rights in and to the use of the driveway existed." (Emphasis added.)

On the basis of the "results of a title search dated February 11, 1982 for the City by Valley Abstract pertaining to the area of the existing driveway east of the retaining wall along Jewett Street and finding *no specific instrument establishing an easement for such driveway*," and other information not relevant here, the commission approved the final subdivision. (Emphasis added.) The plaintiff appealed from that decision.

After reviewing the record before the commission, the trial court found that "the defendant Commission had before it the situation that the plaintiffs did have some right to use the driveway although how this right existed, whether by deed or prescription, was not clear." The court, therefore, concluded: that the approval of the subdivision was illegal because the retaining wall for "Road B" at Jewett Street cuts off the driveway and prevents the plaintiff from using the driveway for access to Jewett Street; this effectively denies the plaintiff of whatever rights she had in the driveway just as if the city had condemned that right; and such rights were not taken for a public use, but for a private purpose to allow the construction of the subdivision.

The majority opinion finds error in the lower court's decision after making the following conclusions: (1) the trial court's finding that the plaintiff had "some right to use the driveway" was beyond its scope of review; (2) the commission properly limited its inquiry to whether the subdivision complied with the regulations; (3) the commission correctly did not address the question of whether the plaintiff had an easement; and (4) the trial court's inquiry should have been limited to whether the commission properly applied the subdivision regulations. In this connection, the record discloses that in response to the plaintiff's motion for further articulation of its decision, the trial court responded that it could find no legal authorities to support its con-

clusion that the subdivision approval was a taking for a private purpose which the commission could not legally do, and that it did not rule on the late claim of noncompliance of the subdivision with the regulations because that claim was not raised in the complaint or trial brief.

Notwithstanding the ordinary limitation upon the scope of review by the trial court of a subdivision approval for compliance with the pertinent regulations, other legal and constitutional claims challenging the commission's decision are not precluded from court consideration. It was upon such a claim made by the plaintiff that the trial court found the approval of the commission to have been illegal.

The facts and circumstances of this case are unique and without precedent. The trial court recognized that the plaintiff's property rights were being subverted and taken by an agency of the city for a private purpose, constituting an inverse condemnation for an illegal purpose, and that without compensation. The evidence before the commission demonstrates that the plaintiff is entitled to ingress, egress and regress over the driveway created by the city's actions in relocating and regrading Jewett Street in 1918. The city engineer's report to the plaintiff predating the subdivision proposal confirms her right to use the driveway for access to the street. The report of the commission's title searcher also confirmed the origin and continued use of the mutual driveway. Randall's engineer in his descriptive presentation of the subdivision proposal admitted that the residents along the present driveway have a right to its use.

The plaintiff has a constitutionally protected right of access to Jewett Street. It is a property right appurtenant to her land. The existence of Jewett Street as a public highway before its relocation and regrading

in 1918 is undisputed. The original layout of this highway created two easements: the public easement of travel, that permits the general traveling public to pass over the highway at will, and the private easement of access to the highway and to the connecting system of public roads. *Luf* v. *Southbury,* 188 Conn. 336, 341, 449 A.2d 1001 (1982). The shifting westward of the east line constituted an abandonment of that portion of the former highway east of the retaining wall and now constituting the driveway in question. This action of the city terminated the public easement of travel over the driveway now supported and separated from the relocated highway by the retaining wall. The private easement of access to Jewett Street and connecting public roads of necessity continued. The record before the commission is replete with evidence of that, but the city records confirming the easement over this now private driveway are convincing and should have been persuasive to the commission. The commission erred in looking for a nonexistent specific grant of an easement by and between the predecessors in title of the properties now owned by the plaintiff and Randall.

General Statutes (Rev. to 1985) § 13a-55, entitled "Right-of-way of property owners bounding discontinued or abandoned highway," provides: "Property owners bounding a discontinued or abandoned highway shall continue to have a right-of-way over it to the nearest or most accessible highway, provided such right-of-way has not been acquired in conjunction with a limited access highway." The proviso, added to the law in 1963; Public Acts 1963, No. 226, § 55; is not relevant in the situation before us. Under this law, the private easement over a former highway continues in force and effect. Abutting owners by operation of law now have a statutory easement of access over a discontinued or abandoned highway. This easement, of necessity, includes the right to travel over and to improve the

roadbed of the former highway. *Luf* v. *Southbury,* supra, 344. General Statutes § 13a-55 now preserves for the plaintiff her rights to the driveway created by the city of Ansonia at the time of its relocation of Jewett Street. The commission in its misdirected and fruitless search for a specific grant of a private easement overlooked the statutory easement created for the benefit of the plaintiff and the other abutting property owners by § 13a-55.

In *Luf* v. *Southbury,* supra, the retroactivity of § 13a-55, originally enacted in 1959; Public Acts 1959, No. 674, § 3; was not before the court because the highway abandonment there took place after 1959. The court, therefore, did not consider that issue. Id., 343. Upon review of the terms of the statute and their common meaning; General Statutes § 1-1 (a); I find that § 13a-55 applies to the present case even though it was enacted subsequent to the creation of the driveway by the city's relocation of Jewett Street. The clear language of the statute does not predicate the right of access "upon" the discontinuance or abandonment of a highway, but on the ownership of land "bounding" such a former highway. It is the location of the property, and not the time of the discontinuance or abandonment of the highway, which establishes that its owner "shall continue to have a right-of-way over [the former highway] to the nearest or most accessible highway."

Further, the relocation of Jewett Street in 1918 created by necessity limited access to the new highway over the former roadbed or resulting driveway. The access was necessary and limited because the retaining wall prevented direct access to the new street. Otherwise, a complete bar to access would have resulted, constituting a taking of property rights without just compensation in violation of article first, § 11, of the

constitution of Connecticut[2] and of the fifth amendment to the United States constitution.[3] Finally, the city of Ansonia by its records presented to the commission recognized the plaintiff's right of access to the driveway as a mutual easement of the abutting property owners.

The commission, as an agency of the city of Ansonia, by its approval of Randall's subdivision has failed to recognize the rights of the plaintiff in the driveway created in 1918 by the relocation and regrading of the street and recorded on the city records. By its failure to recognize her rights in the driveway, it has confiscated and barred her right of access to the driveway continued by § 13a-55. Finally, the commission by such failure has deprived the plaintiff of her property rights by its effective termination of her easement of access as an abutter to the abandoned highway. The action of the commission constitutes an inverse condemnation of the plaintiff's property rights and a taking of her property without just compensation in violation of her constitutional guarantees.[4]

The approval by the commission of Randall's subdivision was, therefore, illegal.

I would find no error.

---

[2] Article first, § 11, of the Connecticut constitution provides: "The property of no person shall be taken for public use, without just compensation therefor."

[3] The fifth amendment to the United States constitution states, in relevant part: "No person shall . . . be deprived of . . . property, without due process of law; nor shall private property be taken for public use, without just compensation." This provision applies to the states; *Chicago, Burlington & Quincy R. Co.* v. *Chicago,* 166 U.S. 226, 233–34, 17 S. Ct. 581, 41 L. Ed. 979 (1897); by virtue of the fourteenth amendment to the United States constitution; *Luf* v. *Southbury,* 188 Conn. 336, 342, 449 A.2d 1001 (1982).

[4] See footnote 2, supra.