[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Compounce Associates Limited Partnership, the owner and operator of the Lake Compounce Festival Park located in Bristol and Southington, brings this administrative appeal pursuant to Conn. Gen. Stat. sec. 8-8 against the town of Southington Planning and Zoning Commission. The plaintiff alleges that the defendant illegally denied the plaintiff's site plan application to enlarge the Lake Compounce parking lot in that the defendant impermissibly relied on criteria not explicitly set forth in the Southington zoning regulations governing site plan approval. For the reasons set forth below the plaintiff's appeal is sustained and the case is remanded with instructions that the defendant grant plaintiff's site plan application.
The relevant facts are not disputed. The plaintiff Compounce Associates Limited Partnership owns the Lake Compounce Festival Park which is located in the town of Bristol, but whose parking lot is in the town of Southington. The main route to and from the park is West Street, a state highway also known as Route 229, which is maintained and operated by the State of Connecticut. Route 229 runs generally north and south and intersects Enterprise Drive. The access road to Lake Compounce and its parking area in turn connects with Enterprise Drive. Lake Compounce has been a family amusement CT Page 4925 park for many years. Since 1988 Compounce has sponsored outdoor musical concerts. Those concerts have spawned numerous lawsuits[1] and an outpouring of complaints from Southington residents and town officials who complain of the increased traffic, noise and pollution allegedly created by the concerts.
In March 1986, the defendant Commission approved a site plan for the Lake Compounce parking area. As then approved, approximately 4,000 parking spaces were authorized. At the time of the 1986 site plan application, and continuing to the present, Lake Compounce was located in an R-80 residential zone. Because an amusement park is not a permitted use in an R-80 zone, Lake Compounce applied for and was granted a special permit, pursuant to section 3-01.2 of the Southington zoning regulations, to operate an amusement park. The special permit has remained in effect from its granting to the present.
At the time the special permit was granted to the then owner of Lake Compounce, the Hershey Corporation of Hershey, Pennsylvania, concerts were not held at Lake Compounce. In 1988, the new owner of Compounce, the Joseph Entertainment Company of Milwaukee, began to sponsor outdoor concerts. Because of a significant increase in persons attending the park, particularly the concerts, Compounce Associates submitted an application on April 21, 1989 to the defendant Commission to modify the existing site plan to permit an increase in the number of parking spaces from 3,941 to 6,362. Plaintiff's application to modify the existing site plan was submitted to the Zoning Commission pursuant to section 9 of the Regulations of the Town of Southington.
Because the shows and concerts at Lake Compounce generate a substantial volume of traffic affecting Route 229, the state highway contiguous to Lake Compounce known as West Street, the plaintiffs were also required to obtain the approval of the State Traffic Commission as a condition to the plaintiff expanding its parking lot. Pursuant to Conn. Gen. Stat sec. 14-311, the plaintiff filed the appropriate application with the State Traffic Commission (hereinafter "STC") to modify Certificate 606 which the Commission had originally issued in June, 1986, permitting the plaintiff to operate with a parking lot of 3,941 spaces. During the spring of 1989, the STC held hearings on plaintiff's application, at which time all interested parties, including the Southington Town Attorney, were permitted to address the Commission. At those hearings persons opposing the application expressed the same concerns that were subsequently to be the focus of the plaintiff's application to the defendant Planning and Zoning Commission. Specifically, the STC was presented with information concerning the increased level of traffic attributable to the Compounce CT Page 4926 concerts and the need for the plaintiff to substantially widen and improve West Street (Route 229) from I-84 to Enterprise Drive to accommodate the traffic. On May 4, 1989, the STC voted unanimously pursuant to Conn. Gen. Stat. sec. 14-311 (d) to issue the revised Certificate (Certificate 606-A), subject to the "approval of the development by the Southington Planning and Zoning Commission", and subject to a number of other conditions and requirements. For the purposes of this appeal, the significant aspect of the STC approval is that while the plaintiff was required to improve the traffic signals on West Street and widen portions of West Street, the improvements required by the STC were not as extensive as those suggested by the Town of Southington, namely, that West Street be widened in its entirety to four lanes from Enterprise Drive to I-84.
Having obtained approval from the STC which required it to make certain improvements to Route 229,[2] the plaintiff then appeared before the defendant Commission on at least three occasions in the spring and summer of 1989. A review of the lengthy record discloses that at each of those meetings, during which both the plaintiff's and defendant's traffic consultants presented their findings and conclusions to the Commission, the almost exclusive focus of discussion was the perceived effect that the concerts had on Route 229 and other roads ancillary to the Park. Throughout their presentation the plaintiff insisted that: a) the improvements directed by the STC were adequate to address the increased volume of traffic generated by the Compounce concerts; b) that even if the improvements directed by the STC were insufficient, the local zoning commission did not have authority to order improvements to a state highway under the jurisdiction of the STC; and c) that in any event, because the only issue before the Commission was approval of the site plan parking lot modifications, the defendant Commission, acting in its administrative capacity, was limited solely to a consideration of whether the proposed plan met the requirements of the zoning regulations, and could not consider off site issues, such as the effect the park has on local traffic.
Those opposing the application, including the Town Planner, raised a number of objections to approving plaintiff's application. Those objections fell into two general categories. The first concerned the amount of traffic generated on West Street by the Compounce concerts. In particular it was argued that approval of the application would result in an unacceptable level of traffic service on a portion of West Street and that in order to properly accommodate the increased vehicle traffic substantial modification of West Street would be required. The second general objection concerned the question of whether outdoor concerts were beyond the original scope of the CT Page 4927 special permit.
On July 5, the Commission voted 4 to 2, with one abstention, to deny Compounce's application. By letter dated July 7, 1989, the Commission formally notified Compounce that the site plan application had been denied, but gave no reasons for its denial. Following the denial, at another Commission meeting, the Commission stated its reasons for the denial on the record. By letter dated July 19, 1989, the town planner informed the plaintiff of the reasons for the denial. Of the five reasons offered three concerned the purported negative affect of traffic on local roads caused by traffic to and from Compounce. The other two reasons for denial generally concern the question of whether the use of the park for concerts is permitted by the special permit
 I.
Conn. Gen. Stat. sec. 8-8 requires that the plaintiff, as a condition of prosecuting its appeal, first prove that it is aggrieved by defendant's actions. At the hearing before this court the plaintiff presented the testimony of John Trinkl who is the theater director at Lake Compounce. His testimony, in conjunction with the relevant land records introduced through him, demonstrate that Lake Compounce Associates is the owner of the subject property for which site plan approval was denied by the defendant Commission. As such, this court finds that plaintiff has a specific, personal and legal interest which has been specially and injuriously affected by the defendant's decision; Smith v. Planning and Zoning Board,203 Conn. 317 (1987); and is therefore aggrieved by defendant's decision.
Because the defendant Commission was acting in its administrative capacity when it denied plaintiff's site plan application, the question on appeal is whether the evidence in the record reasonably supports the defendant's decision. This court, of course, cannot substitute its judgment as to the weight of the evidence for that of the agency. If, however, the defendant has acted illegally or arbitrarily or has abused its discretion its decision must be vacated. Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 57 (1987) (citations omitted).
 II
Plaintiff's principal argument is that the defendant Commission exceeded the scope of its power by considering off site traffic problems even though the defendant's own regulations do not explicitly authorize the Commission to consider CT Page 4928 off site traffic in evaluating a site plan application. The court agrees.
The standards governing site plan approval are well established. Section 8-3 of the Connecticut General Statutes defines the standards governing site plan approval. Under section8-3 (g), "[a] site plan may be modified or denied only if it fails to comply with requirements already set forth in the zoning and inland wetlands regulations." "[I]n reviewing site plans, the commission has `no independent discretion beyond determining whether the plan complies with the appropriate regulations . . . [and] is under a mandate to apply the requirements of the regulations as written.'" Allied Plywood, Inc. v. Planning Zoning Commission, 2 Conn. App. 506, 512, cert. denied, 194 Conn. 808 (1984); Norwich v. Norwalk Wilbert Vault Co., 208 Conn. 1, 12-13 (1988); Kosinski v. Lawlor, 177 Conn. 420,427 (1979). A site plan may be denied only if it fails to comply with requirements set forth in the zoning regulations, and only if those zoning regulations impose specific criteria for site plan review. Kosinski v. Lawlor, supra at 423, 427; Marmah, Inc. v. Town of Greenwich, 176 Conn. 116, 118 (1978). Further, as our Supreme Court has recently ruled, a zoning commission cannot deny an application for a site plan based on off site traffic considerations unless the governing regulations explicitly make off site traffic a ground for denial. TLC Development, Inc. v. Planning and Zoning Commission of the Town of Branford et al., 215 Conn. 527 (1990).
In its letter of July 19, 1989, denying plaintiff's application the defendant Commission asserted in paragraph 2 that, "traffic accessways, particularly West Street, are not adequate in width to handle the additional traffic proposed by the plan in violation of section 9-02.1 of the Zoning regulations." In addition, paragraphs 1 and 4 of the July 19 letter of denial also specifically referenced the traffic problems on West Street.
Thus, the question for this court is whether the defendant's reliance on the potential traffic problems on West Street, a street which is neither part of the parking lot for which site plan approval was sought nor immediately contiguous thereto, is explicitly authorized by the defendant's own regulations. If it is not then under the rule of TLC Development, Inc. v. Planning and Zoning Commission, supra, the defendant Commission acted illegally.
Section 9 of Southington's zoning regulations is entitled "SITE PLAN REVIEW"[3]. Section 9-02, under the heading of "Considerations for Approval", states that in reviewing site plan applications the Commission shall give specific consideration CT Page 4929 to five enumerated factors. One of those factors, Section 9-02.1, is entitled "Traffic Access". It requires that all proposed traffic access ways be "adequate but not excessive in number; adequate in width, grade alignment and visibility; not located too near street corners or other places of public assembly; and other similar safety considerations."
Neither section 9, generally, or section 9-02, specifically, authorizes the defendant Commission to rely on off site traffic as the basis for denying plaintiff's application. First, by its own terms Section 9-02.1 refers to "traffic access ways." While that term is not defined in the regulations it is evident from the context in which it used, as well as by its plain meaning, that "traffic access ways" refers to those roads which are immediately adjacent to the site and provide ingress to and egress from the site. This conclusion flows from the requirement of Section 9 that "proposed access ways" not be located on too near street corners and other places of public assembly." Because statutes are to be construed so that no word is treated as superfluous or insignificant; Kulis v. Moll,172 Conn. 104, 111 (1976); "traffic access ways" must be deemed to have a meaning more limited and specific than "street" as used in the phrase "street corners". This accords with the definition of "access" provided by Blacks' Law Dictionary which states that "in real property law, the term `access' denotes the right vested in the owner of land which adjoins a road or other highway." (Emphasis supplied). See Conn. Gen. Stat. sec.1-1 (words and phrases are to be construed according to the commonly approved usage of the language) and Caldor, Inc. v. Heffernan, 183 Conn. 566, 570 (1981).
Based on the foregoing this court concludes that the defendant Commission erred by interpreting section 9.02 to include West Street as an accessway to the site when West Street neither adjoins the parking lot nor provides direct access to or egress from the lot.
Even, however, if West Street were deemed to be a traffic accessway within the meaning of Section 9.02-1, the defendant improperly relied on possible traffic problems on that roadway as the basis for denying plaintiff's site plan application to enlarge its parking lot. In TLC Development, Inc. v. Planning and Zoning Commission, supra, the Supreme Court ruled that it is impermissible to deny site plan approval based on off site traffic concerns unless the zoning regulations governing plan approval authorize the Commission to consider off site traffic as a criteria for approval. The present case is controlled by the holding in TLC.
In TLC, the applicant, whose property abutted Route 1 CT Page 4930 in Branford, applied for and was denied site plan approval to construct a shopping center. The zoning commission cited as its reason for denial the increased traffic on Route 1 and adjoining streets. Like the Southington regulations governing site plan approval, the Branford regulations set forth general objectives to be considered, including the adequacy of traffic access to the site.[4] In reversing the decision of the Branford Commission, the court stated that,
 "To the extent that the content of this general objective deals with offsite traffic considerations, our review discloses no similar provisions elsewhere in the Branford zoning regulations. Thus offsite traffic considerations should not have served as the basis for denying the plaintiff's site plan application." Id. at 532.
A comparison of the Southington and Branford regulations discloses no significant difference between the two and thus no reason for this court to depart from the rule of TLC that a zoning commission, acting in its administrative capacity, is prohibited from denying a site plan application based on offsite traffic unless such authority is "specifically articulated in the zoning regulations." Id. at 521, n. 2.
Section 9-02.1 of the Southington zoning regulations sets forth general requirements concerning accessways. Section 9-02.1 requires that the traffic accessways to the proposed site be adequate in number, width and grade and not be located too near street corners. Like the Branford regulations considered in TLC there is nothing in the language of either section 9-02.1 or any other provision of the Southington regulations to suggest that the off site traffic concerns can be used as the basis for denying altogether a site plan application. Three of the five reasons given by the Commission for denying plaintiff's application all concern off site traffic on West Street. This court concludes that those reasons do not, by virtue of the language contained in Section 9.01 of the defendant's regulations, constitute a proper basis for the defendant's denial of plaintiff's application. This conclusion is bolstered by the fact that by the admission of the Southington Town Planner the plaintiff's application met all the technical requirements in the zoning regulations for site plan approval, with the traffic impact on West Street being the only concern of his office.[5]
 III
The plaintiff, as an alternate ground for its appeal, CT Page 4931 argues that the STC's jurisdiction over West Street, a state highway, preempts the defendant Commission from entering any order that would contravene or conflict with the permission granted to the plaintiff by the STC, pursuant to Conn. Gen. Stat. sec. 14-311, to expand plaintiff's parking lot.
The facts relevant to this claim have been previously set forth and can be summarized briefly. Because Lake Compounce is an open air park, generating a large volume of traffic affecting a state highway, to wit, Route 229, the plaintiff was required by Conn. Gen. Stat. sec. 14-311 to obtain approval from the STC to enlarge its parking lot. Prior to the defendant's ruling on plaintiff's application, the STC issued a certificate of approval to the plaintiff requiring the plaintiff to widen parts of West Street and make other modifications to it.[6] The STC required the widening of West Street at Enterprise Drive, but did not require that West Street in its entirety be widened to four lanes from I-84 to Enterprise Drive as requested by defendant. Nevertheless, despite the STC directives concerning the scope and extent of modification to West Street, the Zoning Commission continued to insist during its consideration of plaintiff's application, that plaintiff make modifications to West Street in excess of those required by the STC. The plaintiff contends, and this court agrees, that the defendant commission is not empowered to condition site plan approval on plaintiff making modification to a state highway under the jurisdiction of the STC when such modifications would conflict with those ordered by the STC.
Pursuant to Conn. Gen. Stat. sec. 14-311a, plaintiff, as previously described, obtained Certificate 606-A from the STC, permitting plaintiff to expand its parking lot provided that it modified Route 229 in accordance with the STC conditions. A review of the record discloses that despite the conditions set forth in the revised Certificate the defendant Commission would not approve plaintiff's site plan unless and until plaintiff made improvements to Route 229 that would have exceeded the scope of those ordered by the STC. Under these circumstances, the actions of the defendant irreconcilably conflict with Conn. Gen. Stat. secs. 14-311 and 14-311a, and if permitted to stand would frustrate the achievement of the state's objectives. For these reasons Conn. Gen. Stat. sec. 14-311
preempts the authority of the defendant Commission to condition site plan approval on the plaintiff making modifications to a state highway which were not authorized by the STC.
The standard for evaluating a preemption claim is well established.
"[A] local ordinance is preempted by a state CT Page 4932 statute whenever the legislature has demonstrated an intent to occupy the entire field of regulation or matter; or as here, whenever the local ordinance irreconcilably conflicts with the statute. Whether an ordinance conflicts with a statute or statutes can only be determined by reviewing the policy and purposes behind the statute and measuring the decree to which the ordinance frustrates the achievement of the state's objectives.
Shelton v. Commissioner, 193 Conn. 506, 517-18 (1984).
The validity of plaintiff's claim, therefore, depends, first, on an assessment of the purpose and policy of Conn. Gen. Stat. sec. 14-311, and second on a determination of whether that policy is undermined by defendant's decision in this case.
Conn. Gen. Stat. sec. 14-311 is contained in Chapter 249 of the General Statutes which is entitled "Traffic Control and Highway Safety". It states
 (a) No person, firm, corporation, state agency, or municipal agency or combination thereof shall build, expand, establish or operate any open air theater, shopping center or other development generating large volumes of traffic, having an exit or entrance on, or abutting or adjoining, any state highway or substantially affecting state highway traffic within this state until such person or agency has procured from the state traffic commission a certificate that the operation thereof will not imperil the safety of the public.
Conn. Gen. Stat. sec. 14-311a, pursuant to which plaintiff obtained an amended Certificate, provides as follows:
 Any open air theater, shopping center or other development, generating large volumes of traffic, in respect of which a certificate of operation has been issued under section 14-311 by the state traffic commission, or any such open air theater, shopping center or other development in operation on July 1, 1967, shall not increase its parking facilities by fifty or more CT Page 4933 parking spaces without first procuring a new certificate of operation from the state traffic commission under section 14-311.
Both of these provisions, when read together, evidence a legislative intent that certain facilities which are proximate to state highways, and whose operation affect traffic and safety on state highways, shall receive STC approval prior to their development or expansion. It is clear from the language of the statutes that the legislature deemed it necessary for the protection of the public that the STC, whose responsibilities are set forth in Conn. Gen. Stat. sec. 14-298, certify that the operation of parks such as Lake Compounce not jeopardize safety on state highways.[7] In order to fulfill its responsibilities, the STC, pursuant to sec. 14-311 (d), is authorized to issue a certificate of approval for open air theaters on the condition that improvements to the roadway be made "to handle traffic safely and efficiently."
In this particular case the STC, after receipt of evidence and extensive hearings, concluded that the conditions attached to Certificate 606-A were necessary to insure the safety of motorists on Route 229. In making that decision the STC had the input of Southington officials who argued that the STC should order more extensive modifications to Route 229 than the STC eventually directed. Under these circumstances it would defeat the purpose and intent of sec. 14-311 to allow the defendant to deny plaintiff's application because of plaintiff's refusal to undertake road modifications more extensive than those required by the STC. To hold otherwise would be to frustrate the legislative policy of insuring that decisions affecting construction and modifications of state highways be made by one agency, the STC. "If that intention is to be carried out and the policy and purpose behind the legislative enactment is to be implemented, the ultimate authority to make such rules and regulations must rest solely with the state traffic commission." Manchester Sand and Gravel Co. v. South Windsor,203 Conn. 267, 276 (1987).
Defendant refers this court to the cases of P.X. Restaurant et. al. v. Town of Windsor et. al., 189 Conn. 153
(1983) and Helicopter Associates Inc. v. City of Stamford,201 Conn. 700 (1986) for the proposition that local zoning agencies may exercise coordinate jurisdiction with state regulatory agencies over the same subject matter. While as a general proposition defendant is correct, the cases relied on by the defendant are distinguishable from the present case in that those cases involved the zoning board exercising jurisdiction over matters of purely local concern which do not implicate state interests. For example, in Helicopter Associates v. City of CT Page 4934 Stamford, supra, the plaintiff, who received a permit to establish a heliport by the state aeronautic agency, was denied permission to locate it in a particular area of Stamford. In rejecting the plaintiff's preemption claim, the court noted that the legislature did not evidence an intent to usurp local zoning prerogatives as to the placement of heliports. Likewise, in P.X. Restaurant v. Town of Windsor, supra, although the plaintiff was awarded a liquor license by the State Liquor Commission, the zoning board was empowered, despite plaintiff's preemption claim, to deny occupancy to the bar because of health and safety reasons which were appropriately the concern of the local commission. In the instant case, however, the actions of the defendant commission created an irreconcilable conflict with the state regulatory scheme which has the effect of thwarting the legislative purpose behind Conn. Gen. Stat. sec.14-311. Under these circumstances the State statute prevails. Manchester Sand and Gravel v. South Windsor, supra.
 IV
Finally, plaintiff argues that the defendant erred by requiring that Compounce provide a "C" level of traffic on West Street . Because of this court's ruling that the defendant was not authorized to deny plaintiff's site plan application on the basis of alleged traffic problems on West Street, it follows that defendant's requirement that plaintiff maintain a "C" level of service on West Street was also erroneous. Furthermore, as defendant concedes, by the terms of defendant's own regulations a "C" level of service is not required in an R-80 zone. See, Section 9-10.3 of the Zoning Regulations of the Town of Southington.
For the foregoing reasons, plaintiff's appeal is sustained and the case is remanded to the Town of Southington Planning and Zoning Commission with instructions that it grant plaintiff's site plan application.
SO ORDERED.
HOLZBERG, J.