[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This appeal arises out of a decision by the defendant, New Canaan Planning and Zoning Commission (hereinafter "The Commission"), to deny the application of the plaintiff Town Close Associates (hereinafter "Town Close") for a special permit and site plan so as permit the construction of 104 housing units and 14,790 square feet of commercial space on 3.6 acres in a business zone A on Elm Street in the town of New Canaan. In this mixed use development Town Close proposes to dedicate 20% or 21 of the dwelling units to affordable housing as that term is defined in Section 8-30g of the General statutes and therefore the application is for approval of an "affordable housing development" under that statute.
The Commission held public hearings on the application on January 26, 1993 and February 23, 1993 and public meetings to review the application on April 6, April 13 and April 27, 1993 at which time it denied the application citing seventeen reasons for its action. On May 14, 1993, Town Close resubmitted the application in an effort to respond to these reasons. Public hearings were held on the resubmission on June 8 and June 15, 1993. On June 21, 1993, the Commission denied the application, citing fourteen reasons in support of its action. This appeal ensued.
On February 24, 1994, this court heard oral argument and viewed the premises in the presence of counsel and representatives of the parties. On or about May 1, 1994, counsel notified the court that the parties were engaged in settlement negotiations and requested the court to defer further action in the case until notified to the contrary. Subsequently, the court was advised that negotiations had failed and that the case was ripe for decision.
 I. AGGRIEVEMENT
As with any zoning appeal, the court's inquiry must begin with the issue of aggrievement. CT Page 4252
As previously noted by this court in Pratt's CornerPartnership v. Southington Planning and Zoning Commission,9 Conn. L. Rptr. 10 at 291 (1993). Unlike § 8-8, § 8-30g(b) arguably creates a different basis for standing to appeal the denial of an affordable housing application. Apparently "Any person who is denied or is approved with restrictions which have a substantial adverse impact on the viability of the development", has standing to appeal. On the other hand, if traditional rules governing aggrievement apply, this plaintiff qualifies under both standards. The evidence at trial demonstrated that not only was the plaintiff denied its affordable housing application but it also has been the uninterrupted owner of an option on the property in question at all times pertinent to this appeal. The evidence at trial indicated that Town Close sustained its interest in the real estate during this same period of time. Thus, the plaintiff is found to be aggrieved. Goldfeld v. Planning and ZoningCommission, 3 Conn. App. 72 (1985).
 II. BURDEN OF PROOF
While the Commission concedes this to be an affordable housing appeal under Section 8-30g, it contends that by taking the appeal and by making affirmative allegations in its complaint, the plaintiff has "assumed the burden of proof through its pleadings" and therefore has waived the statutory burden of proof imposed on the Commission by § 8-30g(c).
In Pratt's Corner Partnership, supra at 292, this court stated that "although the allegations of the plaintiff's complaint occupy a position of reduced importance under the new scheme, they nevertheless help to frame the issues". The legislature has shifted the burden of proof in affordable housing appeals. Through the instrumentality of a complaint the plaintiff does not shift it back to itself. To do so, would thwart the statute's remedial legislative purpose. West Hartford InterfaithCoalition, Inc. v. Town Council, 228 Conn. 498, 551 (1994).
 III. THE DEFENDANT'S REASONS
CT Page 4253
Consideration of the Commission's reasons for denial of the application necessitates reference to certain facts relevant to the application.
The property is the former site of a lumber yard and is now used for commuter parking and some commercial occupancies. The property is bounded on the north by Elm Street, on the south by the New Canaan line of the Metro-North railroad, on the east by office buildings and the New Canaan railroad station and on the west by two single family houses and a commercial building. Elm Street is a major thoroughfare which courses through the downtown business district of New Canaan and is the most commonly used road to get from the west side of town to the center of town.
In 1992, in apparent recognition of the fact that according to the Connecticut Department of Housing, only 1.4% of New Canaan's housing stock consists of "affordable housing" within the meaning of § 8-30g(f), Town Close proposed various amendments to the New Canaan zoning regulations which would permit the construction of affordable housing in accordance with Town Close's conceptual site plan for the property. After several public hearings were held from May to October, 1992 the Commission adopted amendments that represented a compromise between Town Close's proposal and the Commission's proposal. The subject application was filed pursuant to these amendments.
A trial court's approach to reviewing a zoning authority's denial of a special permit must begin with a statement of the principles that govern such review. "[A] zoning commission has no discretion to deny the special exception if the regulation and statutes are satisfied. . . . When a zoning authority has stated the reasons for its actions, a reviewing court may determine only if the reasons given are supported by the record and are pertinent to the decision. . . . The zoning commission's action must be sustained if even one of the stated reasons is sufficient to support it." Feldsman v. Zoning Commission, 31 Conn. App. 674,678 (1993).
This traditional rule must now be applied in harmony with the provisions of § 8-30g(c) which, in shifting the burden of proof to the zoning authority, requires that the decision and reasons cited for the decision be "supported by sufficient evidence in the record". In Kauffman v. Danbury, 232 Conn. 122
(1995) our Supreme Court considered for the first time the meaning of the "sufficient evidence" standard. In construing the CT Page 4254 term, the court rejected equating that standard with the "substantial evidence" standard that ordinarily applies to administrative zoning decisions. Instead, the court approved a more relaxed standard that historically has applied to legislative as opposed to administrative zoning decisions. Thus, under § 8-30g(c) this commission's only burden was to show that "the record before the [commission] supports[ed] the decision reached". West Hartford Interfaith Coalition, Inc. v.Town Council, supra at 513; and that the commission did not act arbitrarily . . . illegally, . . . or in abuse of its discretion" (Internal quotation marks omitted). Protect Hamden/North Havenfrom Excessive Traffic and Pollution, Inc. v. Planning and ZoningCommission, 220 Conn. 537, 543-544 (1991).
Proceeding now to consider the commission's fourteen reasons within this context it facilitates review to separate the reasons into two groups, viz: those that are supported by sufficient evidence and those that are not.
Reasons Supported by Sufficient Evidence.
Reasons 2, 3, 7, 8 and 9 depend for their viability upon whose interpretation is correct, the plaintiff's or the defendant's. Each of these reasons involves the commission's unchallenged right to interpret its own regulations. Our Supreme Court recently reaffirmed that right in Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 109
(1995). This court must accord "deference to the construction given a statute by the agency charged with its enforcement.Anderson v. Ludgin, 175 Conn. 545, 555 (1978). Deference may be appropriate when the issue is the application of general statutory language to a particular fact bound controversy. . . . [However] it is for the courts and not the administrative agencies to expound and apply governing principles of law." Id. at 109. The court went on to point out however, that it modified that rule in Starr v. Commissioner of Environment Protection,226 Conn. 358 (1993), wherein it stated that "a trial court may properly give deference to the agency charged with the enforcement of the statute where there are two equally plausible interpretations of the statutory language". Ultimately however, the issue is one of law for the court especially where the regulation has never been subjected to judicial scrutiny.Lockwood v. Professional Wheelchair Transportation, Inc.,37 Conn. App. 85, 93 (1995). CT Page 4255
Reason Number Two.
This reason states that the parking garage is not underground as defined in § 60-25.1 of the regulations, therefore it is a "parking structure" that is prohibited by § 60-9.2.C. The commission's position is that "all exterior vertical sides must be covered by earth". This is derived from the definition of the term "underground" as found in § 60-25.1. Town Close argues that the last sentence of § 60.9.2.C controls because it is part of the parking section. It contends that § 60-25.1 applies in all cases where there is no specific provision which covers the topic. This position requires the commission to engage in a rather sophisticated exercise of statutory construction. Clearly, both interpretations are equally plausible and consistent with the language and purpose of the regulations, therefore, the commission's interpretation should be given deference. Starr v. Commissioner of Environmental Protection,
supra.
Reason Number Three.
The commission reasoned here that since the structure has been determined in reason number two not to be underground, Town Close is not entitled to the fifteen percent floor area bonus authorized by § 60-9.2.C(2) and therefore is not entitled to a bonus of six units. Here too, the commission interpreted the term "curb level" differently from the developer because it found that "the first floor level above the parking exceeds two feet above the curb level on Elm Street at both ends of the deck". As with other sections of the regulations, the hearing transcripts are replete with examples of architects who where not sworn as expert witnesses but who spoke as members of the public on this issue. Most of them disagreed with Town Close's interpretation and advanced their own which was more in line with that of the Commission. All of the interpretations were equally plausible on this matter of first impression. The Commission's interpretation was consistent with the language and purpose of the regulations and is therefore entitled to deference.
Reason Number Seven.
The plaintiff and the defendant differ on how to interpret § 60-11.2 and § 60-25.1 of the regulations. The commission includes the parking structure in the height calculation and holds that Town Close's method of calculation of CT Page 4256 height applies only to a building that fronts on more than one street. Town Close used the Elm Street curb level as a base line for the entire project. It also offered a second method for determining height which involved using the vertical distance between the average finished grade of an adjacent accessway and the average height of the roof of the structure. The Commission rejected this approach. In this highly technical area the Commission should be entitled to fashion its own interpretation of how to determine building height. The Commission's view must prevail.
Reason Number Eight.
Section 60-11.3 provides that no length of a continuous building wall shall exceed 80 feet unless there is an outer court. The Commission believes that the outside perimeter of the building's garage is a wall and since the separate sections of the structure exceed 80 feet in length, they are not in compliance. Town Close cites the BOCA code[1] which states that the edge of a slab is not a wall. Also, Town Close argues since there are arches in the wall these constitute a break in the wall and therefore the wall is not continuous. Once again, deference should be given to the Commission's interpretation of this regulation because no definitive interpretation of this provision exists and the Commission's view is as plausible as the developer's. It is rational and consistent with the meaning and purpose of the regulation.
Reason Number Nine.
The Commission determined that the loft units exceed two stories in height because a loft is a story and therefore apartments with lofts violate § 60-25.1. This regulation defines story as "a part of the building between any floor and the floor above, or in its absence, the ceiling or roof above". Town Close argues that since the regulations do not define the floor area necessary to make a loft a story, the BOCA code controls. Town Close further argues that the loft is a mezzanine and that § 605.1 of the BOCA code provides that "a mezzanine shall not contribute to the number of stories or height". . . . The Commission declined to apply the BOCA code to its regulations but instead chose to interpret the language of its own regulation without reference to the BOCA code.
Town Close asserts that the preemptive effect of the BOCA CT Page 4257 code is binding on New Canaan, Bencivenga v. Milford, 183 Conn. 168
(1981). While this proposition is undeniably valid as far as it goes, the preemptive statewide effect of the BOCA code is limited to where the local ordinance deals with the same subjectmatter. Bencivenga v. Milford, supra at 172. In Bencivenga, the subject matter was the fitness of a building for human occupancy which both the City of Milford through local ordinances and the state through the BOCA code sought to regulate. Here, the subject matter is planning and zoning which, though having an overlapping purpose is clearly distinct in its subject matter. Compare General Statutes §§ 8-1 through 8-38 to §§ 29-251 through29-282. The Commission is not bound to apply the BOCA code but is free to adopt its equally tenable interpretation. The court concludes that each of these reasons is supported by sufficient evidence in the record.
 IV. NECESSITY FOR DECISION TO PROTECT PUBLIC INTERESTS.
The next step in the analysis required by Section 8-30g is for the court to determine whether the commission has sustained its burden of proof that "the decision is necessary to protect substantial public interests in health, safety or other matters which the commission may legally consider." "Where a zoning commission has formally stated the reasons for its decision, the court should not go behind that official collective statement . . . [and] attempt to search out and speculate upon other reasons which may have influenced some or all of the members of the commission to reach the commission's final collective decision." DiMaria v. Planning and Zoning Commission,159 Conn. 534, 541 (1970).
In the preamble portion of its resolution of denial, the commission made certain generalized findings with regard to the public interest.[2]
In Pratt's Corner Partnership, supra at 293, this court said "in order to comply with the statute and sustain its burden of proof when it denies an application for an affordable housing development, the zoning authority must specifically articulate through the reasons it gives how and why each of the precepts embodied in subsections (2), (3) and (4) supports its denial. In other words, the assigned reasons must address categorically (1) the necessity to protect a particularly identified public CT Page 4258 interest or interests; (2) must reflect that the commission engaged in the balancing test dictated by subsection (2); and (3) must manifest an honest effort to devise reasonable changes to the development that would protect the public interest that is jeopardized by the proposal. A decisional format that presents anything less than this abdicates the zoning authority's solemn responsibility and impedes meaningful judicial review. Nothing less should be required under a remedial statute of this nature.Keyes v. Brown, 155 Conn. 469, 474 (1977). At the same time the reasons need not be in a form to satisfy the meticulous criteria of a legal expert. Protect Hamden, supra at 554."
Neither the preamble nor the reasons considered above specifically identify the public interests which the commission wishes to protect nor do they articulate how or why these public interests will be endangered. Notwithstanding, in its trial brief the commission invites the court to "review the transcripts" to ascertain the public interests that underlie the reasons. Both in its brief and in oral argument the commission advanced three discreet public interests that it wants protected: (i) the promotion and preservation of the integrity of its affordable housing regulations, (ii) protection of property values against excessive size and bulk of the structure, and (iii) preservation of current traffic conditions.
Recognizing that it is inappropriate for this court to search the record where the commission has collectively stated its reasons, DiMaria v. Planning and Zoning Commission, supra, nevertheless, to the extent that the articulated reasons incorporate consideration by the commission of the public interests mentioned above, this court will determine whether they satisfy the requirements of subsections (c)(2)(3) and (4).
(i) Integrity of the Affordable Housing Regulations. The commission's position is not unlike the position taken by the North Branford Planning and Zoning Commission in NationalAssociated Properties v. North Branford Planning and ZoningCommission, 9 CSCR 17 (November 17, 1993). In that case the commission denied an application for affordable housing on the grounds that the affordable housing development "conflicted with the commission's own affordable housing regulations." There, the commission insisted that the developer comply with its newly adopted set of affordable housing regulations. In response, this court held that the preservation and promotion of its own affordable housing regulations did not constitute a substantial CT Page 4259 public interest which clearly outweighed the need for affordable housing when strict compliance with those regulations resulted in rejection of the application. Recently, our Appellate Court inWisniowski v. Berlin Planning and Zoning Commission, 37 Conn. App. 303,312 (1995) held that § 8-30g does not contemplate a denial of an affordable housing application on the grounds that it does not comply with the underlying zoning of the area. The facts in Wisniowski were similar in that in both cases the deviations or variations were not in use but rather in size and bulk of structures and in lot size. The court held that "the rigorous standard of § 8-30g dictates that the commission cannot deny an application on broad grounds such as non compliance with zoning". Id. at 314.
In West Hartford Interfaith Coalition, Inc. v. Town Council,
supra at 516-517, our Supreme Court, in its first decision under § 8-30g, upheld the trial court's determination that the commission had failed to sustain its burden of proof that an increase in the size of the project over that permitted under existing regulations constituted a substantial public interest which outweighed the need for affordable housing.
An examination of the record in this case fails to disclose that this commission has satisfied its burden of proof that preservation and protection of the integrity of its own affordable housing regulations is a public interest which clearly outweighs the need for affordable housing in New Canaan.
(ii) Protection of Property Values. The second public interest advanced is that the project is too massive in size and bulk and therefore would have a detrimental effect on property values. Density control is clearly a proper goal for the zoning commission under § 8-2 of the General Statutes.
A comprehensive examination of the record fails to reveal any evidence of the nature or extent of any claimed detrimental effect on neighboring properties which this project will produce. Indeed, the record is silent on how and to what extent a building that is 34 feet rather than 30 feet above curb level would be detrimental to property values. As described earlier, the neighborhood is almost exclusively commercial in use. In fact, the site is in the town's central business district. Similarly, there is no reasonable basis in the record to support the notion that New Canaan has a substantial public interest that should be protected by having the garage portion of the structure CT Page 4260 underground, not allowing the garage to constitute a wall or in requiring that the wall not be continuous. There is no reasonable basis in the record for concluding that its decision on these points was necessary to protect the public interest.
Even if these conditions were to constitute properly protectable public interests, the record is barren of any evidence that they clearly outweigh the need for affordable housing. In fact, the record shows that the commission failed to engage in any exercise by which these public interests were balanced with the need.
(iii) Traffic Impact. The final public interest identified is traffic impact which will be discussed subsequently in this opinion.
Reasons not Supported by Sufficient Evidence
Reasons 5, 6, 14, 16 and 17 are held not to be supported by sufficient evidence as that term was defined by our Supreme Court in Kauffman v. Danbury, supra. This court's inquiry then must be to determine whether the commission sustained its burden of proof that the record supported the decision reached, Kauffman at 153.
Reason Five
Section 60-17.5E of the regulations requires that loading spaces have a fourteen foot clearance. Town Close's resubmission of March 9, 1993 changed the location and height of the loading spaces in order to provide for a fourteen foot clearance. The evidence is directly contrary to the commission's findings.
Reason Six
The commission concluded that the plan called for insufficient fire lanes and provided for insufficient personal safety. The record reveals that on February 22, 1993 Robert A. Fairty, the fire marshal, submitted a memorandum to the developer which stated that the project provides adequate fire department access. On March 2, 1993 he submitted another memorandum in which he recommended that the applicant provide sprinklers even though the state building code did not require them. On March 22, 1993, fire chief Steven E. Benko, Jr., submitted a memorandum to the commission in which he stated that the driveway was proper for equipment access and because the developer now agreed to CT Page 4261 sprinkler the residential and commercial portions of the complex, the fire department had no objection to the site plan. So, reason six therefore has no support in the record.
Reason Fourteen
The commission found that "the landscaping and fencing as proposed would not effectively screen or protect neighboring residential homes from noise, glare and visual intrusion." Town Close has proposed six foot high screening in the form of a solid wooden fence and dense evergreen planting. Town Close points out that § 60-14.13 of the regulations specifically contemplates protecting residences by the erection of walls and fences up to six feet in height. The record is also clear that it is only on the west side of the project that any residences exist; the other three sides are bounded by commercial uses. In addition, the record is devoid of any evidence of any noise or glare which is likely to emanate from this project and adversely affect residential properties.
Even if the record were to contain sufficient evidence to support this reason it defies comprehension precisely how this condition could constitute a substantial public interest which is entitled to protection. There is no record evidence beyond the unsubstantiated fears expressed by lay persons that supports this reason.
Reason Sixteen
For traffic impact to constitute a substantial public interest it must cause congestion in the streets or a traffic hazard. General Statutes, Section 8-2. Styles v. Town Council,159 Conn. 212 (1970). The commission here has ignored its own regulation, § 60-3.6.F(2) which requires mitigation of adverse effects on traffic conditions if a level of service is reduced from D to E. Instead, it has determined that "by its verynature the application will further reduce the level of service" (emphasis added). The nearby intersection which it fears will deteriorate from level D to E was determined by Alan Mess, Town Close's traffic engineer, to remain unaffected by the project. He found that all intersections were operating at level C or better except for the following: "Grove and Elm on Saturday is at level E and that would not change. Elm and Weed in the morning now at level D will not change; Elm and Weed in the afternoon now at level B would not drop to level C." Howard Reynolds, the town's CT Page 4262 traffic engineer agreed with this assessment. Therefore there is no rational basis for the commission's conclusions on this point. The court notes that even if this reason did satisfy the substantial public interest test there is nothing to show that the commission performed the requisite balancing test described in § 8-30g(c)(3).
Reason Seventeen
This reason deals with the bulk of the building and its impact on property values within the town. This reason was treated above under the subject of "Integrity of the Affordable Housing Regulations".
 V. THE STIPULATED JUDGMENT
Reasons 1, 4, 10B and 12 depend for their validity upon a stipulated judgment which was entered into by the commission and the New Canaan Lumber Company, the present owner of the property, under which the defendant agreed to issue certain zoning permits necessary for the construction of an 85,000 square foot office complex in consideration for certain undertakings by the owner. Among these undertakings were promises by the owner to (1)
construct 130 spaces of commuter parking and; (2) dedicate 400 lineal feet of its Elm Street frontage to the town for future street widening. By its terms, the project as extended with the approval of the court, was to commence in 1990. In fact, construction never commenced.
Clearly, these reasons reflect the commission's belief that the judgment was binding on Town Close. Accordingly, the commission sought to enforce its terms against Town Close and when Town Close refused to acknowledge the applicability of the stipulation or submit to its terms, the commission denied the application for noncompliance.
Indubitably, certain provisions of the stipulation raise bona-fide questions as to their application and interpretation. For instance, the time limit mandate for construction raises the question whether the stipulation expired by its terms by non performance. Also, paragraph 10 states that the judgment "shall not operate as res judicata nor shall collateral estoppel result with respect to any matter raised in litigation concluded by such CT Page 4263 judgment." In their briefs, the parties take opposite positions on these and other issues arising out of the meaning, scope and enforceability of the stipulation.
In determining the applicability of the stipulation, the commission exceeded the scope of its authority under both §§8-3c and 8-30g of the General Statutes and § 60-3.17 of its own regulations. None of these provisions confer upon the commission the power to resolve these issues. Such a power rests only with the judicial authority which the commission could have invoked by instituting appropriate legal action to secure enforcement of the stipulation to obtain a construction of its terms or establish ownership of the Elm Street strip of land.Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 58
(1987). It is beyond this court's proper scope of review to reach these issues in this zoning appeal. Gagnon, supra at 59. Accordingly, the commission acted illegally in basing its reasons for denial upon a stipulated judgment whose essential provisions were in dispute at the time that it acted. In order to do so, it was bound to establish its right to rely on the stipulation through judicial intervention. In fact, the defendant itself agrees with this principle and yet argues that the court is bound by the stipulation.
But even if the commission were entitled to apply the stipulation against Town Close, the commission's decision does not contain any indication as to why that particular reason constitutes a substantial public interest or why that particular public interest clearly outweighs the need for affordable housing. At best, the stipulation is based on reason 4 which is subsumed under the general findings made in the tenth and eleventh "whereas" clauses contained in the resolution of denial. As this court stated in Pratt's Corner Partnership v. SouthingtonPlanning and Zoning Commission, supra, the commission has a duty under the statute to engage in such an exercise.
The court finds that the commission has failed to satisfy its burden of proof within the meaning of § 8-30g, accordingly, the commission's decision is reversed.
MOTTOLESE, J.